# GREAT NORTHERN RAILWAY COMPANY *v.* O'CONNOR.

## ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 473. Submitted January 6, 1914.—Decided February 24, 1914.

The rule that carriers are not concerned with questions of title but must treat the forwarder as shipper and charge the applicable rates, *Int. Com. Comm.* v. *Del., Lack. & West. R. R. Co.*, 220 U. S. 235, applies also to accepting the forwarder's classification and valuation, without regard to any private instructions given by the actual shipper to the forwarder.

A shipper, whose forwarder has violated instructions as to valuation or classification to his damage, has his remedy against the forwarder but not against the carrier. He is bound by the acts of his agent.

A shipper has a remedy in direct proceedings before the Interstate Commerce Commission to attack the reasonableness of the tariff and if justified may obtain relief by a reparation order or suit in court after a finding of unreasonableness; but in a suit for damages before such a finding he cannot attack the filed tariff as unreasonable.

Where the filed tariff states alternative lower and higher rates based on

valuation the carrier is entitled to collect the rate applicable to the value declared and the shipper is liable for that valuation.

This result is not affected by the use of printed forms. The minds of the parties met and the value as well as the rate was fixed by the contract.

120 Minnesota, 359, reversed.

THE Boyd Transfer Company of Minneapolis in addition to its regular transfer business acted as a forwarder by railroad. By collecting from different shippers small lots of goods sufficient in the aggregate to fill a car, it secured carload rates and out of the difference between carload and less than carload rates it made a profit and at the same time was enabled to offer better rates to the small shipper. How this difference between the two rates was divided between owner and forwarder, does not appear in the record. At the time of the shipment referred to in this case, the Railroad Company had four rates on household goods (including Emigrant Movables), which vary, both according to the weight and value of the shipment, as follows:

Less than Carload Lots (value not stated) . $3.00 per cwt.
Less than Carload Lots (not to exceed $10
   per cwt.)........................ 2.00  "   "
Carload Lots (value not stated).......... 1.60  "   "
Carload Lots (value not to exceed $10).... 1.00  "   "

While these tariffs were in force, the Boyd Transfer Company was employed by the plaintiff, on terms not stated, to box, transfer and ship certain property which she desired to have sent to Portland, Oregon. The articles consisted of a typewriter, stationery, books, curtains, wearing apparel, jewelry and other personal effects. Some of them had been packed in a trunk and the balance were boxed by the Boyd Company and loaded by it into a car filled with household goods. The weight of the load was 22,000 lbs. The Boyd Company filled out a bill of lading, describing the shipment as "One car of Emigrant Mov-

ables." "Released to $10 per cwt." and naming "Boyd Transfer and Storage Company, shipper." The bill of lading on presentation was signed by the agent of the Railroad Company. The goods were lost en route and the plaintiff brought suit against the Railroad Company for $598.65, their full value. The Company filed a plea setting up that the property had been destroyed without its fault, and further contended that in view of the provisions of the tariff and the fact that the goods had been shipped on the $1 rate, the carrier could not be held liable beyond $10 per hundredweight.

At the trial the plaintiff testified she did not know that there had been any valuation of her goods, as the agent of the Boyd Company in soliciting the shipment had stated that it had a through car, but said nothing to her about shipping her effects as household goods, and she understood that they were to be shipped as a separate consignment. She testified that she had stated to the Transfer Company that her goods were new and as she had no insurance she was willing to pay the regular rates.

The defendant introduced the tariffs, and offered evidence to show that its agents had no knowledge of the contents of plaintiff's boxes which had been loaded into the car by the Transfer Company which also made out the bill of lading and endorsed thereon a statement that the car contained Emigrant Movables Released at $10 per cwt.

A number of auctioneers and dealers in second hand furniture were introduced as witnesses for the purpose of establishing the average value of second hand furniture and household goods. They testified that they were familiar with the value of household goods and second hand furniture; testified that only a few of such effects are sold by weight, but the value being ascertained, the articles could be weighed and the value per pound then

determined. This they illustrated by giving the cost, weight and value per pound of various articles, and gave their opinion as to the average value of shipments of household goods including furniture, carpets, wearing apparel and the like. One witness stated that the average value was about $4 per cwt., another $5 per cwt., another testified that, including a second-hand piano weighing 1500 lbs., the average value would be about $7 per cwt. There was no testimony in rebuttal, beyond the fact that the articles belonging to plaintiff were shown to be worth much more than $10 per cwt.

The court charged that if the Boyd Company was the agent of the plaintiff to make the shipment she was bound by its valuation, provided such valuation was not an arbitrary attempt to limit liability and left to the jury to determine whether there had been such an arbitrary attempt to limit liability. They returned a verdict for the amount claimed in the complaint. The defendant moved for a new trial because of errors in the charge and because the verdict was in excess of the sum for which the defendant could be held responsible under the tariffs filed with the Interstate Commerce Commission. The judge held that the carrier was not responsible for $62.50, the value of jewelry and silverware in the trunk, and the plaintiff having written off that amount, judgment was rendered against the defendant for $533.40, a sum much in excess of $10 per cwt. The case was then taken to the Supreme Court of Minnesota which affirmed the judgment. It held that the Railroad Company was charged with knowledge that a considerable portion of the amount received by shipping at reduced rates went to the Forwarding Company and not to the various owners of the goods packed in one car; and that the Railway Company must have known that the Boyd Company was ignorant of the value and contents of the boxes belonging to the different shippers. It ruled that the Boyd Company had no implied

authority to make an agreement as to the value of plaintiff's goods. It further held that whether there had been any *bona fide* attempt to fix value was a question of fact and as the jury by their verdict had found that there had been no such effort, the plaintiff under *Ostroot* v. *N. P. Ry. Co.*, 111 Minnesota, 504, was entitled to recover the full value of the goods shipped. It further held that the rule announced by it was not opposed to *Adams Express Company* v. *Croninger*, 226 U. S. 491; *Chicago &c. Ry.* v. *Miller*, 226 U. S. 513; *Chicago &c.* v. *Latta*, 226 U. S. 519. The defendant then sued out a writ of error.

*Mr. E. C. Lindley* and *Mr. M. L. Countryman* for plaintiff in error:

Under the Act to Regulate Commerce, defendant in error was bound by the released valuation declared by her agent, the Boyd Transfer and Storage Company, upon which valuation she obtained a lower rate of freight in accordance with the carrier's interstate tariff provisions. *Adams Exp. Co.* v. *Croninger*, 226 U. S. 491; *Kansas City &c. R. Co.* v. *Carl*, 227 U. S. 639; *Missouri, K. & T. R. Co.* v. *Harriman*, 227 U. S. 657; *Wells-Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *C., B. & Q. R. Co.* v. *Miller*, 226 U. S. 513; *C., St. P., M. & O. Ry. Co.* v. *Latta*, 226 U. S. 519.

Since this writ of error was sued out, the Minnesota Supreme Court has seen its error and has in effect overruled its decision in the case at bar. *Ford* v. *C., R. I. & P. Ry. Co.*, 143 N. W. Rep. 249.

*Mr. C. D. O'Brien, Mr. James Mattimore* and *Mr. T. P. McNamara* for defendant in error: ·

The manager of the Transfer Company had no authority to release the value of the goods of defendant in error. *Benson* v. *Oregon Short Line*, 99 Pac. Rep. 1072.

There was no valid contract releasing the value of the

goods in question, and the judgment of the state court should be sustained.

It has not been held in any of the cases cited by plaintiff in error that, under Federal legislation, a carrier may limit its liability for its own negligence without either a contract or acts constituting an estoppel. *Mo., Kans. & Tex. Ry. Co.* v. *Harriman,* 227 U. S. 657; *Released Rates,* 13 I. C. C. 550, 554, 555.

To entitle a shipper to the lower rate instead of the higher one, it must expressly appear that the value of the goods are "declared by the shipper not to exceed $10.00 per 100 lbs."

There was in this case no declared valuation by defendant in error or by the Boyd Transfer Company. On the contrary it appears that the Boyd Transfer Company attempted to release the value of the goods from their true valuation to a lower value.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The plaintiff owned personal effects weighing 545 lbs. and worth $598. She employed the Boyd Transfer Company which was also a Forwarder to box and ship the property from Minneapolis to Portland. The regular freight rate on such a shipment would have been $3 per cwt., but without express authority from her, the Company forwarded her boxes with others under the terms of a tariff which named $1 as the rate on carload shipments of household goods valued at less than $10 per cwt. The car and its contents were destroyed and the state Supreme Court held that the plaintiff was entitled to recover the full value of her property because (1) the railroad agents must have known that the Transfer Company was a Forwarder, without authority to value plaintiff's property, and because (2) there had been no *bona fide* effort to agree upon a valuation.

1. It is conceded that the carrier had no knowledge of the contents of the boxes which were loaded by the Transfer Company and forwarded under the low rate applicable to household goods worth less than $10 per cwt. In the absence of something to indicate that the Transfer Company was guilty of false billing, the carrier was not required to make special inquiry, but could rely on the statement that the car was loaded with goods of the character and value stated. For, although the Boyd Company was a Forwarder, engaged in collecting a number of small shipments from various persons in order to fill a car and obtain the lower rates applicable to carload shipments, yet the Railroad Company was obliged to treat the Forwarder as shipper, even though thereby the carrier lost the benefit of the higher rate which would have been applicable to separate and small shipments. This was the ruling in *Int. Com. Comm.* v. *Delaware, Lackawanna & Western R. R.*, 220 U. S. 235, where it was held that the carriers were not concerned with the question of title, but must treat the Forwarder as shipper and charge the rates applicable to the quantity of freight tendered regardless of who owned the separate articles. If the Forwarder was shipper for the purpose of securing carload rates, it was also shipper for the purpose of classifying and valuing, in order to determine which tariff rate was applicable.

2. The plaintiff contended, however, that she had expected her goods to be transported as a separate consignment. But the Transfer Company had been entrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that the Transfer Company could agree upon the terms of the shipment, some of which were embodied in the tariff. The carrier was not bound by her private instructions or limitation on the authority of the Transfer Company, whether it be treated as agent or Forwarder. If there was any undervaluation, wrongful classification or

violation of her instructions, resulting in ·damage, the plaintiff has her remedy against that Company.

3. The plaintiff, however, claimed that, even if the Boyd Transfer Company is to be treated as her agent to agree upon the terms of shipment there had been no *bona fide* effort to agree on a valuation, and that she was therefore entitled to recover the ·full value of her goods. In order to meet this contention the defendant offered evidence to show that it had no knowledge of the contents of the boxes and was entitled to rely upon the entry on the bill of lading inasmuch as the fair average value of household goods was less than $10 per cwt. Under the decisions in *Kansas Southern Ry.* v. *Carl,* 227 U. S. 639, 655; *Missouri, Kans. & Tex. Ry.* v. *Harriman,* 227 U. S. 657, it was not necessary to offer evidence to sustain the reasonableness of rates, classification, or other terms in the tariff filed with the Commission. The shipper had the right, by appropriate proceedings, to attack the rate or the classification and if either or both were held to be unreasonable could secure appropriate relief either by Reparation Order, or by suit in court, after such finding of unreasonableness. But so long as the tariff rate, based on value, remained operative it was binding upon the shipper and carrier alike and was to be enforced by the courts in fixing the rights and liabilities of the parties. The tariffs are filed with the Commission and are open to inspection at every station. In view of the multitude of transactions, it is not necessary that there shall be an inquiry as to each article or a distinct agreement as to the value of each shipment. If no value is stated the tariff rate applicable to such a state of facts applies. If, on the other hand, there are alternative rates based on value and the shipper names a value to secure the lower rate, the carrier, in the absence of something to show rebating or false billing, is entitled to collect the rate which applies to goods of that class, and if sued for their loss it is liable only for the loss of

what the shipper had declared them to be in class and value.

4. Nor was the result changed because of the use of printed forms. This appears from the ruling in *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. 331, where it was claimed that the shipper had not been asked to state the value but had merely signed a printed contract naming a value. The court said (p. 338): "The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further." The rule of the *Hart*, *Carl* and *Harriman cases* was not applied in the court below, and the judgment must be

*Reversed and the case remanded for further proceedings not inconsistent with this opinion.*