### ST. LOUIS & S. F. R. CO. v. FIRST NAT. BANK OF ELK CITY et al.

Nos. 6229, 6230—Opinion Filed Dec. 11, 1917.

Rehearing Denied March 19, 1918.

(171 Pac. 467.)

(Syllabus.)

**1. Carriers—Freight Rates—Minimum Carload Rate.**

A carload of broom corn moved out of Elk City over the Wichita Falls & Northwestern Railway Company to Altus, where it was transferred to the St. Louis & San Francisco Railroad Company to be shipped to Wichita, Kan., where the same arrived in due time. S. was both the consignor and consignee, but instructions were noted on the bill of lading to notify the Western Warehouse Company upon its arrival. The bill of lading, with draft attached, was transferred by S. to the plaintiff, who sent the same to a bank at Wichita for collection, which refused to honor the draft on presentation. Thereupon the Western Warehouse Company sued S. and the St. Louis & San Francisco Railroad Company in replevin and recovered 57 bales of said corn, weighing 16,820 pounds, whereupon upon payment of freight on a minimum carload of 25,560 pounds at the rate of 47 cents per hundredweight as noted on the bill of lading issued by the Wichita Falls & Northwestern Railway Co., said 57 bales were delivered to the sheriff and turned over to the Western Warehouse Company. Thereafter S. offered to pay freight on the balance of said shipment of 34 bales in excess of the minimum carload rate already paid, at the rate of 47 cents per hundredweight, and requested that the same be delivered to the Ralls Commission Company, which the St. Louis & San Francisco Railroad Company refused to do, and demanded freight on said 34 bales at the minimum carload rate of 25,560 pounds on the ground that the shipment belonged to S.

and another and was governed by the proviso to rule 6 of the Western Classification, which S. refused to pay, whereupon the St. Louis & San Francisco Railroad Company advertised and sold to the highest bidder said 34 bales, deducting from the proceeds thereof as freight thereon the minimum carload rate of 25,560 pounds, and for other charges, and tendered the balance to S. Held, that the proviso to rule 6 did not apply; that the carrier had no right to make the ownership of the goods the test by which its charges for carriage are to be measured, and was guilty of a conversion of the 34 bales.

## 2. Same—Interstate Carriers—Liability.

Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), as amended by Act June 29, 1906 c. 3591, 31 Stat. 584. 595 (U. S. Comp. St. Supp. 1909, pp. 1149, 1166; Comp. St. 1916, §§ 8604a, 8604aa), imposes upon an interstate carrier voluntarily receiving property for transportation from a point in one state to a point in another state liability to the holder of a bill of lading for loss anywhere en route with a right, when sued with a connecting carrier for loss occurring upon its line, by cross-petition to recover over against the connecting carrier for the amount of such loss or damage evidenced by the judgment against it.

## 3. Same—Contract—Loss of Goods—Valuation—Evidence.

Where the shipping contract provides that in case of loss of. or damage to, the goods, the amount of loss or damage shall be computed at the value of the goods at the place of shipment, and evidence is admitted, in proof of loss, over objection as to the value of the goods at the place of destination, held error.

Error from District Court, Beckham County; G. A. Brown, Judge.

Action by the First National Bank of Elk City against the Wichita Falls & Northwestern Railway Company and the St. Louis & San Francisco Railroad Company, in which the Wichita Falls & Northwestern Railway Company filed cross-petition against the St. Louis & San Francisco Railroad Company, asking a judgment over. Verdict directed for plaintiff against the Wichita Falls & Northwestern Railway Company and in favor of it over against the St. Louis & San Francisco Railroad Company, and the defendant the St. Louis & San Francisco Railroad Company brings error as against plaintiff and its co-defendant, and defendant the Wichita Falls & Northwestern Railway Company brings error as against plaintiff and its co-defendant, which cases were by order of the court consolidated. Reversed and remanded for assessment of damages.

W. F. Evans, R. A. Kleinschmidt, and Fred E. Suits, for plaintiff in error.

C. C. Huff and Echols & Merrill, for defendant in error Wichita Falls & N. W. Ry. Co.

Ledbetter, Stuart & Bell, for defendant in error First Nat. Bank of Elk City.

TURNER, J. This is an action to recover damages for the conversion of 34 bales of broom corn, brought in the district court of Beckham county by defendant in error First National Bank of Elk City, against defendant in error Wichita Falls & Northwestern Railway Company, and plaintiff in error, St. Louis & San Francisco Railroad Company. The facts are substantially: That one J. H. Seright delivered a carload of broom corn to defendant Wichita Falls & Northwestern Railway Company at Elk City, Okla., for shipment to Wichita, Kan. He was both the consignor and consignee of the car, and gave instructions, which were noted on the bill of lading, to notify the Western Warehouse Company, of Wichita, upon its arrival. The freight rate upon said shipment, as noted on the bill of lading, was 47 cents per hundred pounds. The bill of lading issued by said defendant was what is commonly known as the standard or uniform bill of lading. The shipment moved out of Elk City over the line of the Wichita Falls & Northwestern Railway Company to Altus, Okla., at which point the shipment was delivered to defendant St. Louis & San Francisco Railroad Company for transportation to Wichita. There was apparently no delay in the shipment, and the same arrived in due time in perfect order at its destination, and the warehouse company was notified of its arrival. In the meantime Seright had drawn a draft on the Western Warehouse Company for the value of said broom corn, attached to which was the bill of lading, which was indorsed by him to the plaintiff, First National Bank of Elk City, and was transmitted for collection to a bank in Wichita. The warehouse company refused to honor the draft on presentation, but instituted replevin in the district court of Sedgwick county, Kan., and under said writ the sheriff of said county removed from the car 57 bales of broom corn, weighing 16,820 pounds. Mr. Seright was promptly notified of the replevin action. Later that suit went to judgment, and in a telegram to the agent of defendant St. Louis & San Francisco Railroad Company Seright instructed said company to deliver the remaining 34 bales, weighing 9,740 pounds, to the Ralls Commission Company, of Wichita, which the agent refused to do, for the reason, he says, the rate of 47 cents quoted by the agent of defendant Wichita Falls &

Northwestern Railway Company and noted on the bill of lading did not apply, but that the shipment was governed by rule 6 of the Western Classification, which, under the construction given it by said agent of the St. Louis & San Francisco Railroad Company, would make that portion delivered to the sheriff under the writ of replevin one shipment, and the portion remaining another shipment. At the time the Frisco delivered part of this shipment to the sheriff, it collected the freight upon a minimum carload of broom corn of 25,560 pounds. Mr. Seright, as agent of plaintiff, went to Wichita and offered to pay said agent the proportionate amount of the excess of the minimum carload on the basis of 47 cents, as originally noted on the bill of lading issued to him by the Wichita Falls & Northwestern Railway Company, which the agent of the Frisco declined to accept, whereupon, Seright declining to pay more, the agent of the Frisco advertised and sold the remaining 34 bales, and, after deducting the freight, according to his construction of the rules of the Western Classification, together with demurrage and other charges, he tendered Seright the remainder, or $59.84, which he declined to accept, and brought this suit.

Plaintiff contended that the Wichita Falls & Northwestern Railway Company was liable, under the Carmack Amendment to the Hepburn Bill, as initial carrier, but also joined the connecting carrier, St. Louis & San Francisco Railroad Company, as defendant, and prayed for judgment against both. Defendants answered and admitted the bill of lading, and defended the action of the agent of defendant St. Louis & San Francisco Railroad Company in refusing to deliver the shipment to the Ralls Commission Company, and the amount of $59.84 was tendered in court to plaintiff. Defendant Wichita Falls & Northwestern Railway Company also filed a cross-petition against the St. Louis & San Francisco Railroad Company, asking the court, in the event plaintiff recovered judgment against it, for judgment over against the St. Louis & San Francisco Railroad Company for the amount thereof. At the close of the trial, the court directed a verdict in favor of plaintiff against the Wichita Falls & Northwestern Railway Company for $928.50, with interest thereon at 6 per cent. from October 17, 1911, and in favor of the Wichita Falls & Northwestern Railway Company over against the St. Louis & San Francisco Railroad Company for a like amount. The defendant St. Louis & San Francisco Railroad Company has perfected its appeal against plaintiff and defendant

Wichita Falls & Northwestern Railway Company, being cause No. 6229, and defendant Wichita Falls & Northwestern Railway Company has perfected its appeal against plaintiff and defendant St. Louis & San Francisco Railroad Company, No. 6230, which cases have been, by order of this court, consolidated.

It is contended by defendant Wichita Falls & Northwestern Railway Company that the court erred in failing to instruct the jury to return a verdict in its favor, and in peremptorily instructing the jury to return a verdict against it. Both defendants contend that, as it ultimately turned out that this shipment was to be delivered to two consignees, under two expense bills, that rule 6 of the Western Classification applied, and that defendant St. Louis & San Francisco Railroad Company was entitled to demand freight upon the basis of two consignees, or for two minimum carload shipments. Section 6 of the Western Classification provides, in part, as follows:

"Carload freight will be rated and charged according to current rules governing the maximum and minimum weights of merchandise as authorized by companies adopting this classification: * * * Provided, however, the carload rate contained in this classification will apply only upon shipments received in one day from one consignor under one bill of lading, delivered under one expense bill to one consignee. * * * Carriers' agents will not * * * deliver less than carload shipments in order to effect the application of carload rates thereon; less than carload rates will apply on such shipments."

It is admitted that this shipment was received by defendant Wichita Falls & Northwestern Railway Company "in one day from one consignor under one bill of lading." The Frisco, upon its arrival, demanded freight on these 34 bales of broom corn at the minimum carload rate of 25,560 pounds, basing such action upon their construction of said section 6 of the Western Classification, supra. The freight was paid on a minimum carload by the sheriff when, under the writ, he took from said car 16,820 pounds, or 57 bales. Mr. Seright offered to pay freight on said 34 bales of corn upon the basis of 47 cents per hundredweight on the excess of the minimum carload, but this offer was refused, and demand made by the Frisco for freight on a minimum carload. Otherwise stated, defendants contend, not that this shipment was not received in one day from one consignor under one bill of lading, and was not, by the terms of the bill of lading, to be delivered under one expense bill to one consignee, but that, as part of the shipment, at its destina-

tion, turned out to be the property of the consignee and another who seized his share of it in replevin, and thereby caused the shipment to be split and delivered under two expense bills to two consignees, defendants were entitled to collect for two minimum carload shipments under the proviso of rule 6, supra. Not so. When plaintiff aggregated his property with that of the Western Warehouse Company and shipped it as consignor to himself at Wichita as consignee, so as to avail himself of a carload rate thereon, and took a bill of lading as above set forth, he as one consignee under one expense bill, was entitled to receive the shipment at its destination. And the fact that part of the goods were seized as stated thereby disclosing part of the shipment to be the property of another, did not justify the carrier in demanding the charges complained of and in converting the property by a sale thereof to satisfy the claim. This for the reason that the carrier has no right to make the ownership of the goods the test by which his charge for carriage is to be measured.

In Inst. Comm. v. Del., L. & W. R. R., 220 U. S. 235, 31 Sup. Ct. 392, 55 L. Ed. 448, the court had under construction certain rules of the Official Classification territory, 1899, similar to the rule under consideration. These rules, in effect, forbade the combination of goods belonging to several owners for the purpose of a carload shipment, and forbade, therefore, not only impliedly, but expressly, the combination of goods for the purpose of carload rating by means of forwarding agents. Rule 5B provided:

"In order to entitle a shipment to the carload rate, the quantity of freight requisite under the rules to secure such carload rate must be delivered at one receiving station, in one day, by one consignor, consigned to one consignee and destination, except that when freight is loaded in cars by consignor it will be subject to the car service rules and charges of the forwarding railroad. * * * Rule 5B will apply only when the consignor or consignee is the actual owner of the property."

In the spring of 1907 the Export Shipping Company, a New Jersey corporation doing business in Chicago and in New York, shipped from Chicago to New York, by the several railroads who were appellees, three cars of freight, consisting of merchandise belonging to various owners which had been aggregated by the Export Company for the purpose of shipment, and thus becoming entitled to the carload rate. The shipments conformed in all respects to the regulations of the companies, except to the extent that they came under the operation of the restrictions

above referred to. On the arrival of each car in New York the carrier, instead of collecting the carload rate, exacted the less than carload rate, because of the restrictions in question. In August, 1907, the Export Company petitioned the Interstate Commerce Commission to award it reparation against the three carriers to the extent of the difference between the less than carload rates, which had been exacted, and the sums which would have been paid if the carload rate had been demanded. The right to the relief was based upon the assertion that an unlawful discrimination had been occasioned. The restrictions created by the rules were declared void and reparation was awarded, and the carrier was commanded on or before a certain date to desist from attempting to enforce the restrictions. 14 Interst. Com. Comm. R. pp. 422, 437. In an action to enjoin the enforcement of such rules, the circuit court restrained the commission from enforcing the order, and upon final hearing the order and decree of the commission was held void. On appeal, the Supreme Court of the United States, in reversing the circuit court and sustaining the order of the commission, said:

"The contention that a carrier when goods are tendered to him for transportation can make the mere ownership of the goods the test of the duty to carry, or, what is equivalent, may discriminate in fixing the charge for carriage not upon any difference inhering in the goods or in the cost of the service rendered in transporting them, but upon mere circumstance that the shipper is or is not the real owner of the goods, is so in conflict with the obvious and elementary duty resting upon a carrier, and so destructive of the rights of shippers as to demonstrate the unsoundness of the proposition by its mere statement. We say this because it is impossible to conceive of any rational theory by which such a right could be justified consistently either with the duty of the carrier to transport or of the right of shipper to demand transportation. This must be, since nothing in the duties of a common carrier by the remotest implication can be held to imply the power to sit in judgment on the title of the prospective shipper who has tendered goods for transportation. In fact, the want of foundation for the assertion of such a power is so obvious that in the argument at bar its existence is not directly contended for as an original proposition, but is deducted by implication from the supposed effect of some of the provisions of the second section of the act to regulate commerce."

In the syllabus it is said:

"A carrier cannot make mere ownership of goods tendered for transportation the test of the duty to carry, nor may a carrier discriminate in fixing charges for carriage upon such

ownership. Under the act to regulate commerce a carrier cannot refuse to transport carload lots at carload rates because the goods do not actually belong to one shipper or are shipped by a forwarding agency for account of others."

In Great Northern Ry. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703, the court said:

"For, although the Boyd Company was a forwarder, engaged in collecting a number of small shipments from various persons in order to fill a car and obtain the lower rates applicable to carload shipments, yet the railroad company was obliged to treat the forwarder as shipper, even though thereby the carrier lost the benefit of the higher rate which would have been applicable to separate and small shipments. This was the ruling in Int. Com. Comm. v. Delaware, Lackawanna & Western R. R., 220 U. S. 235 [31 Supp. C. 392, 55 L. Ed. 448], where it was held that the carriers were not concerned with the question of title, but must treat the forwarder as shipper and charge the rates applicable to the quantity of freight tendered regardless of who owned the separate articles. If the forwarder was shipper for the purpose of securing carload rates, it was also shipper for the purpose of classifying and valuing, in order to determine which tariff rate was applicable."

We are therefore of opinion that the mere fact that it ultimately fell out that this broom corn belonged to the consignee and another did not justify the St. Louis & San Francisco Railroad Company in raising the freight rate on this car, and attempting to fix its charges upon the basis of such ownership and class this shipment as it did. Hence the court, so far disposed by the record, did not err in directing a verdict against the defendant Wichita Falls & Northwestern Railway Company and over against the defendant St. Louis & San Francisco Railroad Company. This for the reason that the twentieth section of the Act of February 4, 1887 (24 Stat. at L. 379, c. 104; U. S. Comp. Stat. 1901, p. 3154), as changed by the Carmack amendment of June 29, 1906 (34 Stat. 584, 595, c. 3591; U. S. Comp. Stat. Supp. 1909, pp. 1149, 1166), reads:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or trans-

portation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof"

—which means, when applied to the facts in this case, that the Wichita Falls & Northwestern may recover of the St. Louis & San Francisco Railroad Company such amount of damages "as it may be required to pay plaintiff," as evidenced by the judgment he has obtained against the Wichita Falls & Northwestern in this case.

"Required to pay" does not mean that the judgment must be paid as a condition precedent to the right to recover, as contended. "Required," when used in this connection, means asked to pay or asked of right and by authority of law to pay (U. S. v. Armour & Co. [D C.] 142 Fed. 808, 822) as evidenced by the judgment in this case in favor of plaintiff and against the Wichita Falls & Northwestern Railway Company, and not by the actual payment of said judgment. In support of our postition that such is the proper construction of this act, in the syllabus to Atlantic C. L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164. 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, it is said:

"The imposition upon an interstate carrier voluntarily receiving property for transportation from a point in one state to a point in another state, of liability to the holder of the bill of lading for a loss anywhere en route, with a right of recovery over against the carrier actually causing the loss, which is made by the act of February 4, 1887 (24 Stat. at L. 379, c. 104; U. S. Comp. Stat. 1901. p. 3154) § 20, as amended by the act of June 20 1906 (34 Stat. at L. 584. 595, 3591; U. S. Comp. Stat. pp. 1149, 1166). in spite of any agreement or stipulation limiting liability to its own line. is a valid regulation of interstate commerce."

We said a while ago that the court did not err in directing a verdict against defendants, as it did. And such is true, unless he erred in so doing on the evidence of plaintiff, who, on the issue of his measure of damages, was the only witness who testified and whose undisputed evidence disclosed. after properly qualifying, that the reasonable market value of his broom corn at Wichita at the time of its arrival was $200 per ton.

This evidence went in over objection of defendants, who insisted and still insist that the court erred in admitting the evidence, because, they say, that the contract of shipment provides:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property * * * at the place and time of shipment."

As the place of shipment was Elk City, the evidence of the market value of the property at Wichita was inadmissible, and the action of the court in overruling defendant's objection to it and predicating a peremptory instruction upon it was reversible error. In Wegener v. Chicago & N. W. R. Co., 162 Wis. 322, 156 N. W. 201, it is said:

"Such tariffs and bills of lading constituted the contract of shipment. and a stipulation therein. that the amount of any loss or damage for which the carrier was liable should be computed on the basis of the value of the property at the place and time of shipment. was valid and binding upon the shipper."

And 10 C. J. 388. says:

"Where the shipping contract provides that in case of loss of. or damage to. the goods the amount of loss or damage shall be computed at the value of the goods at the place of shipment, evidence as to the value of the goods at the place of destination is, properly excluded."

See. also, Caples v. Louisville. etc., Ry. Co., 17 Mo. App. 14.

Let the cause be reversed and remanded, not for a new trial. but for the assessment to a jury of damages for the loss of the property, pursuant to the views herein expressed.

All the Justices concur.