LABOR RELATIONS BOARD OF PUERTO RICO, ETC., Petitioner, *v.* COMPAÑÍA POPULAR DE TRANSPORTE, INC., Defendant.

No. 41.   Argued April 16, 1954.—Decided August 3, 1954.

*José Trías Monge, Attorney General, A. Torres Braschi, Assistant Attorney General, Ramón Acevedo Oliveras,* and *Eduardo Álvarez de la Vega* for petitioner.   *Héctor Ramos Mimoso* for defendant.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On November 29, 1950 the Transportation Employees' Union and the Compañía Popular de Transporte, Inc.,[1]

---

[1] We will hereafter refer to the former as "the Union" and to the latter as "the Company."

executed a collective bargaining agreement, clause XIX $(n)$ of which reads as follows:

"The Company shall pay to its employees at the end of the year a bonus equal to 1½ weeks, payable one week on December 22, 1951, and the other one-half week on December 29, 1951. This provision shall not in any way be deemed to establish a precedent for future labor-management relations, since it is intended as a special concession which shall be in force during the effectiveness of this agreement, namely, during the year 1951."

It is further provided in clause XXII of the agreement that:

"This agreement shall be in force from January 1, 1951 until December 31, 1951, and shall remain in force from year to year unless either party gives written notice to the other party, not less than 30 days in advance of the expiration date, of its intention to amend or terminate the same at the expiration of the current year. Such notice shall be given to the other party by registered mail sent to its address; and, if the purpose is to amend it for the ensuing period, the notice shall recite the nature of the change or changes in any of the provisions hereof."

Shortly before the expiration of the original period of effectiveness of the agreement, that is, on November 28, 1951, the Union and the Company, through their respective representatives, signed a stipulation which reads verbatim as follows:

"Now come the Transportation Employees' Union and the Cía. Popular de Transporte, Inc., and covenant and agree to extend the operation of the collective bargaining agreement existing between the said Union and the Company so that it shall remain in force until 30 days after the hearing before the Public Service Commission on the new franchise.

"It is stipulated that the Union shall take steps to change the present medical services in such manner as may be more in keeping with the interests of the workers, provided the Cía. Popular shall not have to incur a greater expense. It is understood that the administrative employees shall be covered by the said plan."

The stipulation does not specifically state whether or not the aforesaid clause XIX (*n*) shall be in effect in 1952. There was no problem at all concerning the 1951 bonus. The problem arose shortly before Christmas of 1952, when the Union demanded compliance with clause XIX (*n*) for that year, that is, payment of the one and one-half weeks' bonus referred to therein. On December 22, 1952, as a result of the conflicting views on the matter, the Company and the Union, the former represented by Ularislao Córdova and the latter by J. Álvarez Brunet and A. Guzmán, subscribed "a stipulation submitting the case to arbitration," [2] which copied in its entirety reads as follows:

"The parties hereto agree of their own accord to submit to arbitration the questions which are specified below and on which the parties have not reached an agreement:

*"That the arbitrator decide whether or not subdivision 'n' of clause nineteen (19) of the 1951 Collective Bargaining Agreement is in force for the year 1952, in accordance with the term of duration appearing in the said contract and the stipulation signed by the parties under date of November 28, 1951.*

"The arbitrator (or arbitrators) shall be *the Secretary of Labor of Puerto Rico or such other person as may be designated by him.*

"The parties agree to submit written briefs within .. days, counted from the day of the hearing set by the arbitrator; it being understood that either party, or both, may waive this right if it deems it convenient.

"The award of the arbitrator (or arbitrators) shall be final and binding on the parties." [3]    (Italics ours.)

---

[2] The foregoing stipulation appears on a mimeographed form of the Labor Department, Conciliation Service (Arbitration Section), Form 1–B, in which the italicized portion is typewritten.

[3] The preceding stipulation was signed by the Union and the Company, as already indicated, notwithstanding the fact that by clause III of the collective bargaining agreement a committee of complaints and grievances is created, which shall consist of two Company representatives and two Union representatives, and in spite of the fact that such clause provides that if the four committee members do not reach an agreement on the solution of any complaint there shall be designated a fifth member to be mutually selected by both parties, but in the event they fail to reach an

In consonance with that stipulation, the Secretary of Labor designated Lic. Guillermo Estrella Frasqueri to act as arbitrator in the case. The arbitrator so designated set January 29, 1953, to hear the parties on the scope of the stipulation subscribed on November 28, 1951, by the Union and the Company, to which reference has been made. There appeared at the hearing Ularislao Córdova, for the Company, and Abigaíl Guzmán and Juan Osorio, President and Treasurer respectively for the Union, and Lic. Víctor Bosch as legal adviser for the latter. At the hearing both parties offered the evidence which they believed to be pertinent, and they were granted until the 6th of the following February to file briefs. On March 11 of that year the arbitrator entered his award, analyzing the questions both of fact and of law raised at the hearing, and concluding:

"1.—That when Compañía Popular de Transporte, Inc., and the Transportation Employees' Union signed the stipulation on November 28, 1951, wherein it is stated that it was agreed 'to extend the operation of the collective bargaining agreement existing between the said Union and the Company so that it shall remain in force until 30 days after the hearing before the Public Service Commission on the new franchise,' the whole 1951 collective bargaining agreement, from the first to the last clause, including subdivision (n) of clause XIX of that agreement, was extended 30 days, counted from the said hearing;

"2.—That a decision having been entered by the Public Service Commission in connection with the hearing on the petition for franchise made by Ernesto Cortés Santana on December 18, 1952, and notice of this decision having been given to the parties on December 23, 1952, the said hearings before the Commission were not legally and finally terminated until December 18, 1952, when the decision in the case was entered,

---

agreement for the selection of a fifth member, such member shall be José Víctor Llauger Bosch, and that *the said four members together with the fifth member so selected shall constitute an arbitration committee,* which will afford the workers and the Company an opportunity to present and explain in writing their arguments in the case, and upon examination of the evidence it shall render decision which shall be final and binding on both parties. (Italics ours.)

wherefore the said 30 days shall be counted as of December 23, 1952, when the parties were notified by mail of said decision;

"3.—Since the extension agreed upon in the stipulation was effective until 30 days after said hearings, the 1951 collective bargaining agreement was fully in force, including subdivision (n) of Clause XIX, until January 23, 1953; and

"4.—That by virtue of the foregoing, the Compañía Popular de Transporte, Inc. is bound to pay to its employees who are covered by the said 1951 collective bargaining agreement and its extension as aforesaid, a bonus equal to one and one-half weeks' salary, as provided in said subdivision (n) of said Clause XIX of the agreement."

Under these circumstances, on November 6, 1953, the Puerto Rico Labor Relations Board, on behalf of the Union, filed a petition in this Court asking that we order the Company to comply with the arbitration award and to pay forthwith to its workers the bonus provided in § XIX(n) of the collective bargaining agreement. See § 9(2)(c)[4] of Act No. 130 of May 8, 1945 (Sess. Laws, p. 406), as amended by Act No. 6 of March 7, 1946 (Sess. Laws, pp. 18, 44). Four days later we entered an order directing that defendant be summoned to show cause, if any, within a period of ten days, why the decree sought should not be issued, warning it that in the event of failure to appear within the said period, the decree in question would be issued without further summons or hearing; that in the event it did appear, the showing of cause should be accompanied by brief, and advising that once such brief was filed the case would be submitted for decision, unless either party moved for a hear-

---

[4] Section 9(2)(c) of Act No. 130, *supra*, reads as follows:

"In order to promote collective bargaining, the Board may, in the exercise of its discretion, aid in the enforcement of arbitration awards issued by competent arbitration agencies, whether designated according to the terms of any collective bargaining contract executed between an employer and a labor organization or by virtue of any agreement signed by a labor organization and an employer. Upon the issuance of an arbitration award, the Board may give advice at the request of any party to such award or may, if requested to do so, file in the name of the party so requesting, the proper judicial proceeding in the Supreme Court of Puerto Rico to enforce such award or arbitration."

ing within five days counted from the filing of the brief. The defendant Company filed a timely answer and, by order of this Court, the hearing of the case commenced on March 4, 1954. During the hearing the petitioner—instead of confining itself to a brief exposition of the case, for the purpose of showing that the award had been issued as above indicated, and that the Company had failed to comply —presented oral and documentary evidence tending to pierce in advance the defenses which in its opinion the Company would adduce in order to justify its failure to comply with the award. Such action was erroneous. Realizing this, at the close of the petitioner's evidence and when the case was called for the resumption of the hearing on March 11, we asked the defendant company to state its theory of the case. The Company stated through its attorney, in effect, that its evidence was "directed to show that the manager of the Compañía Popular de Transporte, Inc., subscribed to that submission agreement after making the reservation that . . . the Company . . . reserved, had the right to appeal to the courts . . . that he had authority to represent the Company subject to the condition that an appeal be taken from the award." Defendant's attorney also stated that it would contend (1) that the award is repugnant to public policy, and (2) that the arbitrator committed errors of substantive law and in the weighing of the evidence, indicating at the same time that he would offer no evidence in support of such allegations. After the parties argued the question as to admissibility of evidence on the first question raised by the Company, the Court, through its Acting Chief Justice, said: "In view of the statements made by the attorney (of the Company) that he will offer no evidence on the other grounds of his challenge, and in view of the question raised as to whether or not oral evidence is admissible on the first point previously presented, the Court deems it proper, in view of the arguments offered at this hearing, to allow the parties time to submit memoranda discussing the matter at length: first, whether or not

evidence on the first point raised and argued is admissible, and to take up in that same memorandum all questions of law or other grounds for impeachment. If the Court ultimately rules that the evidence is admissible, a hearing will be set to receive the evidence. On the contrary, if the Court ultimately concludes that the evidence is inadmissible, it will then consider the case as submitted on the merits and proceed to enter final judgment."

In the briefs filed by the parties, in discussing the question as to whether or not the evidence is admissible tending to show that the authority vested by the Company in its manager Ularislao Córdova to sign the stipulation of December 22, 1952, was limited, the parties indulge in a lengthy discussion on the construction and scope of § 25 of our Law of Evidence, which provides that:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section thirty-four, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

However, we need not discuss from that angle the question as to whether or not we should admit the oral evidence tending to show that manager Córdova's authority to sign the stipulation of December 22, 1952, was limited and, hence, whether or not he exceeded his powers as such manager (agent) in signing the stipulation in the form in which he

did. We say this because there is another legal principle by virtue of which nothing would be gained by admitting —assuming that it is admissible under § 25 of the Law of Evidence, *supra*—the evidence which the Company proposes to submit. (By the same token, we need not and do not consider the evidence adduced in this respect by the Board.) The Company has clearly admitted its failure to comply with the award. It has also admitted that Córdova had authority to sign on its behalf the stipulation in question. Its only contention is that Córdova exceeded the powers vested in him. It is unquestionable that "an agent can not exceed the scope of his authority"; that "in complying with the agency, the agent shall follow the instructions of the principal"; that "a principal must fulfill all the obligations which the agent may have contracted, within the scope of his authority"; and that "a principal is liable, in so far as the agent has exceeded his power, only when he ratifies the same, expressly or in an implied manner." Sections 1605, 1610, and 1618 of the Civil Code, 1930 ed. However, it is a well-settled rule that while as between the principal and the agent the scope of the latter's authority may be limited by secret instructions, such instructions do not affect third persons ignorant thereof. *Sabalier* v. *Iglesias*, 34 P.R.R. 338, 351, 353; *Fornaris* v. *Compagnie Generale*, 26 P.R.R. 360. This seems to be the universal rule. It prevails in almost every State of the Union and has also been enunciated by the Supreme Court of the United States. *Great Northern R. Co.* v. *O'Connor*, 232 U. S. 508, 58 L. Ed. 703; *Pacific Mut. Life Ins. Co. of California* v. *Barton*, 50 F. 2d 362, certiorari denied in 284 U. S. 647; *Standard Acc. Ins. Co.* v. *Simpson*, 64 F. 2d 583, certiorari denied in 290 U. S. 688; 12 A.L.R. 112; 2 C.J.S., § § 95 and 96 (*b*), pp. 1202 and 1208; 2 Am. Jur. 88, § 105. This rule has also been recognized in Spain—Judgment of June 20, 1894, 75 *Jur. Civ.*

808.   In this connection, text writer Scaevola states at p. 148, vol. 26, book II of his Commentaries on the Spanish Civil Code (1951 ed.), as follows:

"Prior to the adoption of the Code, the Supreme Court has held that secret orders or instructions as between principal and agent are binding only upon the latter, and they can not affect or prejudice a third party  . . ."

The same view is shared by Oyuelos at p. 198, Vol. 7 of his Digest.

■ The Company has not alleged at any time that the secret instructions given to its manager with respect to the oft-mentioned stipulation of December 22, 1952, were communicated to the Union, and that the Union, notwithstanding its knowledge of such secret instructions, signed the stipulation which has been transcribed verbatim hereinbefore.   On the contrary, it seems to admit that the Union was ignorant of those secret instructions.   The Company's only contention is, we repeat, that it clothed the manager with limited powers and that, notwithstanding that the latter was fully aware of the limitations on those powers, he exceeded them in signing the stipulation in the form in which he did.   There is no doubt that the manager had apparent or ostensible authority to sign the stipulation the way he did, and since it is nowhere contended that the Union had knowledge of those secret instructions, the Company should not be permitted now to offer evidence tending to show such limitations.   Such action would be futile, for, even if the existence of such limitations on the powers of the manager is admitted, such limitations would not be binding upon the Union if it was ignorant of their existence.

We need not discuss the other questions raised by the Company at the hearing, to the effect that the award is repugnant to public policy and that the arbitrator committed errors of substantive law and in weighing the evidence. See, however, *Labor Relations Board* v. *N. Y. & P.R. SS.*

*Co.*, 69 P.R.R. 730, 746–747, note 8; *Labor Relations Board* v. *Sociedad Mario Mercado e Hijos*, 74 P.R.R. 376, 380. Nor is it necessary to discuss, in view of the above conclusion, the effect that might have been produced if the Company, through the attorney representing it in this Court, had filed a motion for reconsideration before the arbitrator.

Judgment will be entered granting the petition and directing defendant to comply with the arbitration award entered on March 11, 1953 in the instant case.

Mr. Justice Negrón Fernández did not take part in the final decision of this case, although he did participate at. its hearing.

Mr. Justice Ortiz did not participate herein.