## AMERICAN BRAKE SHOE & FOUNDRY CO. v. PERE MARQUETTE R. CO.

(District Court, E. D. Michigan, S. D.   June 21, 1915.)

No. 5467.

1. COMMERCE ⬤▭8—LIMITATION OF CARRIER'S LIABILITY—VALIDITY—LAW GOVERNING—"FEDERAL QUESTION."

The validity of a contract between a shipper and a carrier, limiting the carrier's liability in case of the loss of an interstate shipment to the declared value of the shipment, is a "federal question," to be determined under the general common law, and is not within the field of state law or regulation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬤▭8.

For other definitions, see Words and Phrases, First and Second Series, Federal Question.]

2. CARRIERS ⬤▭158—DECLARING VALUE OF SHIPMENT—ESTOPPEL.

Where a carrier, under its tariffs filed with the Interstate Commerce Commission, has two rates on a certain commodity, one applicable when the value of the commodity is declared by the shipper not to exceed a specified amount, and the other when the value is declared to exceed that amount, or is not declared at all, a shipper, who has declared the lower value and thereby obtained the lower rate, is estopped, in case the property is lost, from recovering on the basis of a higher valuation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½; Dec. Dig. ⬤▭158.]

3. PRINCIPAL AND AGENT ⬤▭155—AUTHORITY OF SHIPPER'S AGENT—LIMITATION OF LIABILITY.

An interstate carrier's tariffs, filed with the Interstate Commerce Commission, provided two rates on household goods; the lower being based on a declared value not exceeding a specified amount, with a limitation of liability to that value. Unknown to the carrier, a shipper's agent tendering property for transportation had no authority to declare its value for the purpose of obtaining such lower rate; but he neverthe-

less signed a household goods release, declaring their value not to exceed the value on which such rate was based. *Held*, that the carrier was justified in relying upon the authority of the agent tendering the shipment to sign such contracts concerning the transportation as were provided for in its published tariffs, and the shipper was bound by such contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 571-582; Dec. Dig. ⊕==155.]

At Law. Action by the American Brake Shoe & Foundry Company against the Pere Marquette Railroad Company. On intervening petition by Newell Leonard. Claim of the intervening petitioner allowed in part only.

Newell Leonard, of St. Louis, Mich., in pro. per.
Parker, Shields & Brown, of Detroit, Mich., for receivers.

TUTTLE, District Judge. On June 3, 1913, the intervening petitioner, then residing in Chicago, Ill., employed the Bristol Express Company of that city to take two packages of goods for him to the depot of the Pere Marquette Railroad Company in Chicago, for shipment to St. Louis, Mich. The express company was authorized by the intervening petitioner to pay the freight charges on this shipment, but was not authorized by him to declare the valuation of the goods for the purpose of shipment, or to sign any release of the common carrier's liability in respect to the shipment. The agent of the express company took the goods to the Pere Marquette depot in Chicago and shipped them as directed, signing a shipping order and procuring a bill of lading from the railroad, and signing also a "household goods release," declaring that the value of this shipment did not exceed $10 per hundredweight. The agent of the receivers of the Pere Marquette Railroad Company, receiving such shipment, had no knowledge of any lack of authority on the part of the agent of the intervening petitioner to sign this household goods release.

This shipment was properly classed as household goods, and the rate of 37 cents per hundredweight assessed and paid thereon was assessed in accordance with the tariff of the receivers of the Pere Marquette Railroad Company duly published and on file with the Interstate Commerce Commission. If the agent of the shipper had not signed the household goods release above mentioned, a rate would have been assessed upon the shipment equal to 1½ times the rate that was assessed; such increased rate being duly published and on file with the Interstate Commerce Commission and assessed on household goods in all cases where the aforesaid releases were not signed.

When this shipment arrived at destination, a package described on the bill of lading as "one crate," weighing 100 pounds, and which the intervening petitioner now claims to have been worth $141.50, was missing, and the receivers of the Pere Marquette Railroad Company have never delivered the same to the intervening petitioner. The issue in this case is as to the validity of the household goods release above described, assuming to limit the amount of recovery by the shipper,

in case of loss, to $10 per hundredweight of the goods shipped plus the freight charges ·on the lost portion of the shipment, if the same were prepaid.

[1] The shipment involved in this case was an interstate shipment, and the validity of the contract made between the shipper and the carrier in case of loss is therefore, under the decisions of the Supreme Court of the United States, a federal question, to be determined under the general common law, and is not within the field of state law or regulation. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Michigan Central Railroad v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176.

[2] It is well settled that when, as in the case at bar, a carrier has two rates assessable on a certain commodity, one applicable when the value of the commodity is declared, by the shipper not to exceed a certain sum per hundredweight, and the other when the value is declared to exceed that sum, or is not declared at all, a shipper who has declared the lower value, and thereby obtained the advantage of the lower rate, is estopped, in case the property is lost, from recovering on the basis of a higher valuation than he has declared. Kansas, etc., Ry. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Missouri, etc., Ry. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690.

[3] Nor can it be permitted to avail the intervening petitioner to show that, unknown to the carrier, the authority of the shipper's agent, who tendered the property for transportation, did not include the authority to declare its value for the purpose of obtaining a freight rate and defining the liability of the carrier in case of loss. In the absence of knowledge as to lack of authority in the person bringing a shipment to a railroad station to sign shipping contracts, the carrier is justified in relying upon the authority of the person tendering the shipment to sign such contracts concerning its transportation as are provided for in the published tariffs of the carrier, and the owner of the property is bound by such contracts. Great Northern Ry. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. Ed. 703.

In the O'Connor Case a transfer company in Minneapolis was employed by the plaintiff to take her goods to a railroad station and ship them. The transfer company signed an agreement declaring the value of the shipment to be $10 per hundredweight. The goods were destroyed in transit, and plaintiff sued for a sum much in excess of the declared valuation. The court said:

"At the trial the plaintiff testified she did not know that there had been any valuation of her goods, as the agent of the Boyd Company in soliciting the shipment had stated that it had a through car, but said nothing to her about shipping her effects as household goods, and she understood that they were to be shipped as a separate consignment. She testified that she had stated to the transfer company that her goods were new, and, as she had no insurance, she was willing to pay the regular rates. * * * But the transfer company had been intrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that the transfer company could agree upon terms of the shipment, some of which were embodied in the tariff. The carrier was not bound by her pri-

vate instructions or limitation on the authority of the transfer company, whether it be treated as agent or forwarder. If there was any undervaluation, wrongful classification, or violation of her instructions, resulting in damage, the plaintiff has her remedy against that company."

This decision in my opinion controls the case at bar. An order will be entered authorizing the receivers of the Pere Marquette Railroad Company to pay the intervening petitioner $10.37 in satisfaction of his claim; such payment being based on the declared value of the portion of the shipment lost, plus the freight charges prepaid on that portion.