Argued March 6, reversed March 20, 1928.

## H. H. GEORGE v. SPOKANE, PORTLAND & SEATTLE RY. CO.

(265 Pac. 408.)

**Principal and Agent—Transfer Company, Directed to Deliver Household Goods to Railroad for Shipment, had at Least Implied Authority to Sign Bill of Lading as Shipper.**

1. Where plaintiff and his wife requested wife's sister to have household goods shipped, and sister requested transfer company to deliver the goods to the railroad for shipment, transfer company and its employee had express, or at least implied, authority to sign interstate bill of lading in shipper's behalf, by which reduced freight rates were accepted in return for lower valuation of goods.

**Carriers—Shipper is Presumed to Know Posted Tariff Regulations.**

2. Shipper is presumed to know the tariff regulations which are duly posted.

**Commerce—Federal Law Determines Liability of Carrier for Failure to Deliver Goods Shipped in Interstate Commerce.**

3. Liability of carrier for failure to determine goods shipped in interstate commerce must be determined from federal law and decisions of highest federal court.

Carriers—Owner's Recovery from Railroad for Nondelivery of Interstate Shipment of Household Goods Held Limited to Stipulated Value, Which Transfer Company's Employee, Signing Bill of Lading Designated to Secure Lower Rate (Act Cong. Feb. 4, 1887, as Amended [49 U. S. C. A., § 1 et seq.].

4. Where transfer company was directed to deliver household goods for shipment to railroad, and transfer company's employee signed bill of lading as shipper, in which value of property was declared so as to come within lower freight rate, owner's recovery from railroad for failure to deliver the household goods shipped in interstate commerce was limited to stipulated value in bill of lading, under Act of Congress of February 4, 1887, as amended (49 U. S. C. A., § 1 et seq.; Comp. Stats., § 8563 et seq.).

Appeal and Error, 4 C. J., p. 1186, n 63.
Carriers, 10 C. J., p. 56, n. 36, p. 146, n. 31, p. 147, n. 32, p. 174, n. 35, p. 431, n. 15.
Courts, 15 C J., p. 934, n. 89.

From Multnomah: T. E. J. Duffy, Judge.

Department 2.

This is an action for the conversion of household goods which were shipped by plaintiff from Spokane, Washington, to Portland, Oregon, over the line of defendant's railroad, and were never delivered to the plaintiff.

The cause was tried before the court without the intervention of a jury. Findings of fact and conclusions of law were made and filed and a judgment was rendered in favor of plaintiff for the sum of $1,800, the value of the goods shipped, after giving credit for a portion of the goods which were returned to the plaintiff by a third party. Defendant appeals assigning error. The complaint is in the usual form.

The facts of the case, as shown by the record and found by the trial court, are substantially as follows:

In June, 1924, while the plaintiff and his wife were living in Spokane, Washington, they packed their household goods, wearing apparel and personal effects in various boxes and trunks and placed them in the

basement of the house occupied by plaintiff's sister in Spokane. Mr. George then came to Portland, Oregon. Shortly afterward Mrs. George went to Pullman, Washington, and in September, 1924, at the request of her husband, she telephoned her sister Jennie Price at Spokane and asked her to ship the goods to H. H. George at Portland, Oregon. Miss Price thereafter telephoned the City Transfer Company of Spokane to call for the goods and deliver them to the Spokane, Portland & Seattle R. Company depot for shipment to the plaintiff at Portland. The manager of the City Transfer Company sent Frank Darnell, one of its employees, to get the goods and take them to the S. P. & S. depot. Darnell transported the goods to the depot and delivered them to defendant, and there signed the bill of lading for the shipment of the goods and stipulated a released value on the goods at ten cents per pound. The bill of lading was signed "City Transfer Company by F. Darnell, Shipper." No special instructions were given to the City Transfer Company, except to deliver the goods to the railway company, "for shipment to H. H. George, at Portland, Oregon."

The goods, on arrival at Portland, Oregon, were wrongfully received by a person of the same name as plaintiff, who also received the bill of lading and delivered the same to the defendant railway company.

The defendant in its answer, in effect, pleaded that when the goods were delivered to it at Spokane, Washington, for shipment to Portland, Oregon, the company issued therefor its uniform straight bill of lading prescribed by the Interstate Commerce Commission, naming H. H. George as consignee. The defendant had theretofore duly filed its schedule of freight rates with the United States Interstate Commerce Commission as required by law, and such

schedule was approved by the commission and was in force on September 23, 1924. Under this schedule the defendant was authorized to charge rates which were dependent upon the value placed upon the shipment by the shipper thereof. The plaintiff took advantage of the lower freight rate so provided by the schedule and placed a value upon the shipment not exceeding ten cents per pound.

The bill of lading signed on behalf of the plaintiff by its duly authorized agent reads as follows:

"Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.

"The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding 10¢ per pound.

"It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained including the conditions on back thereof, which are hereby agreed to by the shipper and accepted for himself, and his assigns.

"Contract Terms and Conditions.

"In all cases not prohibited by law, where a lower value than actual value has been represented in writing by the shipper or has been agreed upon in writing as the released value of the property as determined by the classification or tariffs upon which the rate is based, such lower value plus freight charges if paid shall be the maximum amount to be recovered, whether or not such loss or damage occurs from negligence."

Defendant alleges plaintiff was charged and received the benefit of a lower freight rate based upon

the valuation placed by him upon these goods as above. The defendant was authorized to carry, and did carry, the goods of the plaintiff pursuant to the above agreement and classification whereby, under the terms of the Interstate Commerce Act, in consideration of the lower rate agreed to be paid for the carriage of said shipment, the liability of the defendant for any loss or damage in shipment was to be limited to an agreed valuation not exceeding ten cents a pound upon the goods to which the injury or loss occurred. That any recovery by the plaintiff in this case is limited by the said agreement and classification to a released value not exceeding ten cents a pound of any goods of the plaintiff lost or damaged.

Defendant also pleaded in mitigation of damages that a part of the household goods composing the shipment had been recovered by the plaintiff. Before the trial the defendant filed the following offer:

"Comes now the defendant and hereby offers to allow judgment to be entered against it and for the plaintiff in and for an amount not to exceed $101.50, representing and equal to the agreed valuation of ten cents per pound upon all goods of the plaintiff which may be found to have been lost, destroyed, or damaged by reason of their conversion by the defendant herein, together with such costs as the plaintiff may be entitled to in this action."

Reversed.

For appellant there was a brief over the names of *Messrs. Carey & Kerr, Mr. Charles A. Hart* and *Mr. Stanton W. Allison,* with an oral argument by *Mr. Hart.*

For respondent there was a brief and oral argument by *Mr. Albert W. Gentner.*

BEAN, J.—There is practically no dispute in regard to the facts of this case. The question arises as to whether, upon the facts as stated, plaintiff is entitled to the full value of the goods shipped and not delivered, or is only entitled to the stipulated sum of ten cents per pound. The defendant assigns, among other things, the following:

"The court erred in overruling defendant's motion to strike all of the testimony of the plaintiff tending to show a greater value of the shipment in question than the sum of $101.50."

That the court erred in finding the actual and true value of the goods of plaintiff. The court erred in refusing to find, as a part of the findings of fact, as requested by defendant in writing to the effect, as follows:

The shipment of household goods of plaintiff was an interstate shipment and controlled by the act to regulate commerce approved February 4, 1887 (24 Stats. at Large, 379), as amended; that defendant had duly filed its schedules and tariffs approved by the Interstate Commerce Commission.

Plaintiff's shipment was delivered to defendant by a representative of the shipper, who for the purpose of securing the lower or reduced rate for such transportation agreed in writing to a released value of ten cents per pound for the household goods; that the plaintiff, through his representative, signed and accepted the bill of lading which contained the provision "while the rate is dependent on valuation, shippers are required to state specifically in writing the agreed or declared value of the property." That the agreed or declared value of the property is stated by the shipper to be not exceeding ten cents per pound, and that such lower value, plus freight charges

if paid, shall be the maximum amount to be recovered, whether or not such loss or damage occurs from negligence. Defendant requested further instructions in conformity to the bill of lading issued by defendant and the act referred to regulating interstate freight rates; that the total weight of said shipment was 1,015 pounds, and under the act to regulate commerce and the terms and provisions of said tariffs and schedules plaintiff's recovery herein cannot exceed the sum of $101.50.

The findings of the trial court are supported by the testimony. We read the testimony as an aid in understanding the findings and not to change the same on account of any conflict in the testimony. Indeed, we find no such substantial conflict. Aside from this the case is controlled by federal law. The shipment was an interstate shipment. The schedule of tariffs filed by the railroad company with the Interstate Commerce Commission, stipulated that when so agreed at the time of the shipment the value of the property might be declared and limited for the purposes of the shipment and as the basis of a lower freight rate. Was such a stipulation made? The plaintiff H. H. George preceded the shipment of his household goods and went to Portland, Oregon, where he was engaged in teaching. He requested his wife to ship the goods. Mrs. George, who at the time was at Pullman, Washington, phoned to her sister, Miss Jennie V. Price, at Spokane, Washington, to have the household goods shipped to H. H. George, Portland, Oregon. Miss Price in turn requested Ralph Coughlin, owner of the City Transfer Company of Spokane, Washington, to take the goods from where they were stored, and deliver them to the S. P. & S. Ry. Company "for shipment to H. H. George at Portland." The City Transfer Company sent its

employee, F. Darnell, to transport the goods to the freight depot of the defendant at Spokane. No further instructions were given in the matter.

1, 2. The operator of the City Transfer Company, F. Darnell, received the goods and transported them to the freight depot of defendant and assisted the defendant's agent in filling out the regular bill of lading for the shipment. After the list was corrected the released value clause was mentioned by the defendant's agent to Darnell and inserted in the bill of lading, and the same was signed "City Transfer Company, by F. Darnell, Shipper," and by the agent of defendant and delivered to Darnell for the plaintiff. There appears to be a chain of authorization from plaintiff to the City Transfer Company operated by Darnell. The goods were delivered to the defendant "for shipment" by plaintiff's authority, and for no other purpose. The billing of the goods and fixing of the freight rate was apparently a part of the arrangement "for shipment" of the goods. The City Transfer Company had the express authority, or at least implied authority, of plaintiff to sign the bill of lading as a shipper. The plaintiff was presumed to know the tariff regulations, which were duly posted. By virtue of the arrangement he had the opportunity of obtaining the benefit of the lower freight rate. He made no other request or suggestion, either by his agent or otherwise, but after the goods were shipped he waited for their arrival and delivery to him in Portland, Oregon. Plaintiff did not expect that the goods would remain at the depot of the defendant in Spokane until he, or anyone for him, gave any further directions or authorization for their shipment.

3, 4. The shipment of household goods weighed 1,015 pounds. The freight rate accorded plaintiff

under the tariffs was $1.39½ per cwt. The rate on household goods from Spokane to Portland, based upon a higher valuation of fifty cents and not exceeding $2 per cwt., would be double the lower rate or $2.79 per cwt. which would have been the rate on the goods at the valuation of $1,800 claimed by plaintiff in his complaint. We must follow the decisions of the Supreme Court of the United States in this case. It has been held by that court, in effect, that the federal rate regulating statutes are binding, as regards the character of the contract, under which an interstate shipment of goods is made, and no restriction on the authority of the person or transfer company who delivers the shipment to the carrier for the transportation, as to agreeing to a limitation of value and arranging for a low freight rate, can change this rule: *Great Northern Ry. Co.* v. *O'Connor*, 232 U. S. 508, 514 (58 L. Ed. 703, 34 Sup. Ct. Rep. 380, see, also, Rose's U. S. Notes). In that case the owner of household goods employed a transfer company to deliver the property to the carrier, and instructed the transfer company not to agree to any limitation of value. The transfer company failed to observe these instructions and shipped at the reduced rate based upon a limited value for transportation purposes. Because of the supposed lack of authority to agree to the limited value, the state court gave plaintiff judgment for the full value of the goods. This was reversed by the Supreme Court of the United States, *and its decision, we believe, controls the case at bar.* The court at page 514 said:

"The plaintiff contended, however, that she had expected her goods to be transported as a separate consignment. But the transfer company had been intrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the

right to assume that the transfer company could agree upon the terms of the shipment, some of which were embodied in the tariff. The carrier was not bound by her private instructions or limitation on the authority of the transfer company whether it be treated as agent or forwarder. If there was any undervaluation, wrongful classification or violation of her instructions, resulting in damage, the plaintiff has her remedy against that company.''

In *American Railway Express Co.* v. *Daniel,* 269 U. S. 40 (70 L. Ed. 154, 46 Sup. Ct. Rep. 15) (decided October 16, 1925), the shipper's representative, without any understanding with the shipper as to declaration or limitation of value, notified the carrier at the time of shipment that the lower rate based upon the reduced valuation was desired. The court held that the shipper was bound to know the relation between values and rates which was established by the tariffs, and could not avoid the effect of the action taken by his representative in making the shipment. Quoting from the decision:

''The schedules filed with the Interstate Commerce Commission were offered to show the rates, but were excluded, and the judgment was affirmed seemingly on the ground that the sending agent was not shown to have known that a lower valuation secured a lower rate, and that the carrier knew that the agent was ignorant of the true value of the goods. No argument is made for the respondent and it is plain that the judgment cannot be sustained. The carrier's schedules should have been admitted and bound both parties. *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639, 652, 653 (57 L. Ed. 683, 33 Sup. Ct. Rep. 391, see, also, Rose's U. S. Notes); *Southern Express Co.* v. *Byers,* 240 U. S. 612, 614 (60 L. Ed. 825, 36 Sup. Ct. Rep. 410); *American R. E. Co.* v. *Lindenburg,* 260 U. S. 584 (67 L. Ed. 414, 43 Sup. Ct. Rep. 206). The sender is bound to know the relation established by them between values and rates. *Galveston,*

*Harrisburg & San Antonio Ry. Co.* v. *Woodbury,* 254 U. S. 357, 360 (65 L. Ed. 301, 41 Sup. Ct. Rep. 114); *Western Union Tel. Co.* v. *Esteve Brothers & Co.,* 256 U. S. 566 (65 L. Ed. 1094, 41 Sup. Ct. Rep. 584). Judgment reversed.''

In the case of *American Brake Shoe & Foundry Co.* v. *Pere Marquette R. Co.,* 223 Fed. 1018, the transfer company was without authority to agree to a limited valuation, but the court held that there was implied authority to sign such contracts concerning the transportation, as were provided for in the published tariffs of the carrier. The court said:

"Nor can it be permitted to avail the intervening petitioner to show that, unknown to the carrier, the authority of the shipper's agent, who tendered the property for transportation, did not include the authority to declare its value for the purpose of obtaining a freight rate and defining the liability of the carrier in case of loss. In the absence of knowledge as to lack of authority in the person bringing a shipment to a railroad station to sign shipping contracts, the carrier is justified in relying upon the authority of the person tendering the shipment to sign such contracts concerning its transportation as are provided for in the published tariffs of the carrier, and the owner of the property is bound by such contracts. *Great Northern Ry. Co.* v. *O'Connor,* 232 U. S. 508 (58 L. Ed. 703, 34 Sup. Ct. Rep. 380).''

The same rule is laid down in 1 Hutchinson on Carriers (3 ed.), Section 457.

The plaintiff asserts that the opinion in *Grice* v. *Oregon-Washington R. & N. Co.,* 78 Or. 17, 37 (150 Pac. 862, 152 Pac. 509, Ann. Cas. 1917E, 645), sustains his theory of the law and supports plaintiff's judgment. If this case is in conflict with the rule announced by the Supreme Court of the United States, then the federal rule is paramount. It seems the facts differ somewhat in the two cases.

The findings of the trial court do not support the judgment. Under the mandate of Section 3c, Article VII, of the Constitution of Oregon, permitting this court, in a case where the record shows a judgment should be changed to direct a proper judgment to be entered in the same manner and with like effect, as decrees are entered in equity cases, the judgment of the Circuit Court will be reversed and one directed to be entered in favor of plaintiff and against defendant for the stipulated value of the goods, viz., $101.50, with plaintiff's costs in the trial court. Under the circumstances of this case neither party will recover costs in this court.                    REVERSED.

RAND, C. J., and BROWN and BELT, JJ., concur.