Argued and submitted February 12, 1993, reversed and remanded with instructions on appeal; affirmed on cross-appeal March 2, petition for review denied May 31, 1994 (319 Or 150)

## Ky KARNECKI,
### dba Gourmet Pacific Mushroom Company,
*Respondent - Cross-Appellant,*

*v.*

## WICK'S AIR FREIGHT, INC.,
### a Washington corporation,
*Appellant - Cross-Respondent.*

### (9103-01574; CA A74111)

869 P2d 388

Lawrence R. Davidson argued the cause for appellant - cross-respondent. With him on the briefs was Anderson and Yamada, P.C.

Nick Albrecht argued the cause and filed the briefs for respondent - cross-appellant.

Before Deits, Presiding Judge, and Riggs, Judge, and Buttler,* Senior Judge.

BUTTLER, S.J.

---

* Buttler, S. J., *vice* Durham, J.

## BUTTLER, S. J.

Plaintiff, a shipper, filed this action against defendant, an interstate common carrier, for the full value, less salvage, of mushrooms damaged in transit on route from Portland to an airline at Vancouver International Airport in British Columbia. Defendant appeals from a judgment for plaintiff after trial to the court. Plaintiff cross-appeals from the denial of his motion for sanctions under ORCP 17.

The facts are not in dispute. Plaintiff is in the business of gathering wild mushrooms from various places in the 11 western states and British Columbia. He had hired defendant to transport his mushrooms to Vancouver, B.C., for transshipment abroad on many occasions during the preceding five years. During the year in question (1990), he had had defendant transport 26 shipments from Portland to Vancouver, B.C., in connection with each of which he had requested and received a copy of the bill of lading.

On December 18, 1990, plaintiff delivered 2,915 pounds of mushrooms to defendant for motor transport to Vancouver, B.C. His buyer there was Prema Trading, which was to arrange and pay for the transportation to that city for further shipment by air to Frankfurt, Germany. Kellerman, an employee of Prema Trading, in turn, made the transportation arrangements with Orion International Forwarders, Ltd. of Vancouver (Orion), with which he had dealt for about five years. He and Orion were aware that defendant, in accordance with industry practice, offered transportation rates based on the value of the cargo: the higher the value, the higher the rate. Prema Trading and Orion, as plaintiff's agents, had a choice of the lowest rate of $320 for the shipment based on a released value of 50 cents per pound, or $640 based on the full declared value of $17 per pound.

The bill of lading contains two boxes, side by side. The first states:

"Declared Value for Cartage

"$_____.

That box was left blank. The second box states:

"Agreed not to exceed 50¢ per lb. or $50.00 unless greater value is declared on this bill & applicable charges are paid."

Both Prema Trading and Orion had the right to reject the mushrooms if, on arrival, they were not in satisfactory condition; the risk of loss during transportation remained with plaintiff. Prema Trading had the best of both worlds; it and Orion, as plaintiff's agents, chose the lowest rate, which Prema Trading had to pay, without incurring any risk of loss, even though they knew that the released value was unreasonably low for mushrooms. The same choice had been made with respect to each of the other shipments during 1990.

The bill of lading, which was prepared by Orion for the shipment in question, stated:

"PLASTIC BASKETS OF FRESH MUSHROOMS PERISHABLE CARGO—PLS REFRIGERATE BUT DO NOT FREEZE"

Normally, mushrooms can be shipped in a non-refrigerated trailer without freezing; however, a refrigerated trailer is able to maintain a temperature-controlled environment. Although a refrigerated truck was available for this shipment, defendant's loading dock employee believed that he could ship the mushrooms unrefrigerated, because he did not know that "weather conditions up north were subfreezing and 20 degrees colder in Seattle than it was in Portland." He shipped them unrefrigerated. Defendant's president conceded that the employee should have known that the cargo had a high risk of loss during shipment. The mushrooms were found in a frozen condition on arrival in Seattle; the consignee was so advised and rejected the shipment. Plaintiff derived $4,388.05 by way of salvage, then sued defendant for his net loss of $13,174.45. Defendant concedes liability, but disputes the extent of its liability.

■       Although plaintiff's theory of his case is not clear,[1] and it is not clear whether the trial court's ruling was based on negligence law or contract law,[2] both parties argue the case

---

[1] Plaintiff's original complaint alleged a claim for breach of contract and also one for gross negligence. However, his amended complaint omitted the contract claim, leaving only the negligence claim. Defendant pled an affirmative defense of limitation of liability.

[2] Not surprisingly, given the pleadings in this case, the trial judge said that he was "not prepared to give * * * a legal analysis or cite a case," then went on to say that defendant had acted with

as a claim for breach of contract of carriage. We treat it accordingly. Defendant is licensed by the Interstate Commerce Commission to transport goods as a common carrier in interstate commerce. However, defendant was not subject to ICC regulation with respect to this shipment, because the Motor Carrier Act of 1980 exempts transportation of property by motor vehicle as part of a continuous movement before or after transportation by an air carrier, 49 USC § 10526(a)(8)(B), and because the transportation of agricultural products is also exempted. 49 USC § 10526(a)(6)(B).

Generally, interstate shipments are controlled by federal law. *George v. Spokane etc. Ry Co.*, 124 Or 598, 265 P 408 (1928). However, because defendant was not subject to federal regulation in this transaction, plaintiff argues that state law controls, because there is no federal common law, citing *Erie R. Co v. Tompkins*, 304 US 64, 58 S Ct 817, 82 L Ed 1188 (1938). In that case, federal court jurisdiction was premised on diversity of citizenship in which federal courts had been applying a federal common law pursuant to *Swift v. Tyson*, 16 Pet 1, 10 L Ed 865 (1842). The Court in *Erie* overruled *Swift v. Tyson, supra,* holding that in diversity cases federal courts must apply the law of the state in which the action arose, whether it be statutory or judge-made law. In such cases, the Court held, there is no such thing as federal common law.

Here, the action is in the state court and the transaction involves interstate and foreign commerce, which Congress has constitutional authority to regulate. US Const, Art I, § 8. The question is whether the states may regulate a part of interstate and foreign commerce when Congress has deregulated that part. Neither party addresses that question, although plaintiff contends that state law controls, because there is no federal common law, and defendant contends that federal law controls. Ultimately, however, each party argues

---

"extreme indifference to the welfare of the plaintiff's goods. He took a product which he knew greatly exceeded the limitation, alleged limitation of value, he accepted a known risk in transporting the mushrooms, and * * * simply said customers have the option of putting, paying the extra premium if they want reasonable care * * *.

"I just don't believe that this type of total indifference can be circumvented by claiming there's immunity in a limitation clause."

that it wins, regardless of whether state law or federal law controls.

Plaintiff relies primarily on general contract law of this state: a party in material breach of a contract cannot insist upon its terms. *Wasserburger v. Amer. Sci. Chem.*, 267 Or 77, 514 P2d 1097 (1973). Plaintiff contends that, because defendant failed to transport the mushrooms in a refrigerated truck as instructed, it may not rely on the released valuation defense as provided in the contract. If that argument is correct, a common carrier could seldom, if ever, rely on that defense, because its contract requires that it deliver the goods without damage; almost any breach that resulted in non-delivery, late delivery when time is of the essence, damage in transit, and so forth, would be a material breach of the contract of carriage.

■ That is not the law, either federal or state, that is applicable to bills of lading used in contracts of carriage. Federal courts have uniformly upheld the right of common carriers to charge shipping rates based on the value of the goods, provided that the carrier offers the shipper a reasonable choice of rates between the declared value and the so-called released value (no value declared). At least as early as 1913, the United States Supreme Court has applied such agreements in accordance with their terms. In *Adams Express Company v. Croninger*, 226 US 491, 510, 33 S Ct 148, 57 L Ed 314 (1913), the Court said:

> "Neither is it conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy."

■ In a case almost on all fours with the case at bar, the Court upheld the released value provision in the bill of lading, even though the carrier failed to follow the shipper's specific written instructions in bold type: "PROTECT FROM FREEZING, MUST BE DELIVERED BY 2/8/89, PACKED IN WET ICE." The shipper failed to declare the value, making the released value 50 cents per pound for 1,260 pounds ($2,084). The carrier did not deliver the goods until February 10, and permitted the cargo (a vaccine) to sit in an

unheated, uninsulated trailer where it was destroyed by the cold. The shipper then sued the carrier for $908,040, the contract price of the cargo, contending, as does plaintiff here, that, because the carrier breached material provisions of the contract, it could not rely on its terms. The Court held that the shipper was bound by the bill of lading provisions, thereby limiting its damages to the released value. *American Cyanamid v. New Penn Motor Exp.*, 979 F2d 310 (3d Cir 1992).

That is the well-established rule in federal courts, *see Hampton by Hampton v. Federal Exp. Corp.*, 917 F2d 1119 (8th Cir 1990); *Deiro v. American Airlines Inc.*, 816 F2d 1360 (9th Cir 1987), even if, as here, the particular shipment has been deregulated, *Ruston Gas Turbines v. Pan American World Airlines*, 757 F2d 29 (2d Cir 1985), and regardless of the degree of the carrier's fault. *Deiro v. American Airlines Inc., supra*, 816 F2d at 1366. In *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F2d 191 (2d Cir 1989), the court did apply state law in a diversity case where the cartage was entirely within the New York City commercial zone and, therefore, did not involve interstate commerce. It upheld the limitation of liability clause ($50) in the bill of lading, notwithstanding the actual value of the loss ($150,000), and notwithstanding the gross negligence of the carrier.

Plaintiff relies on *Coughlin v. Trans World Airlines, Inc.*, 847 F2d 1432 (9th Cir 1988), for the proposition that federal courts apply general contract law to bar a carrier's "access to the released valuation term" of its bill of lading. Its reliance is misplaced. The problem in that case was that the carrier had failed to advise the plaintiff of the alternative provided in its published tariff; therefore, it had violated its tariff agreement and, under general contract law, could not rely on the limitation on its liability provided in its tariff. That is not the case here.

Finally, plaintiff argues that, in any event, the limitation of liability pursuant to the released valuation in this case is void as a liquidated damage provision, because it is a penalty. He relies on *Illingworth v. Bushong*, 297 Or 675, 688 P2d 379 (1984). This case, however, is not one involving a liquidated damage clause. Parties to a contract may agree on liquidated damages in the event of a breach if damages that would result from a breach are incapable of ascertainment or

are very difficult of accurate estimation. Here, the damages are readily ascertainable; therefore, the parties could not have included a valid liquidated damage clause. The provision is not a penalty; rather it is a classic one involving a choice of rates to be paid by the shipper, depending on the shipper's declared value of the goods to be shipped. Plaintiff could have avoided the limitation of defendant's liability by declaring the actual value of the mushrooms in the bill of lading and by paying the higher rate.

Even if Oregon law applies, the bill of lading here is expressly permitted by Oregon's Commercial Code under "Bills of Lading: Special Provisions." ORS 77.3090(2) under that heading provides:

> "Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed the consignor is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier's liability for conversion to its own use."

Therefore, regardless of whether federal or state law controls this federally deregulated interstate shipment, the released value provided in the bill of lading controls, and plaintiff is limited to damages in the amount of $1,457.50.

On appeal, reversed and remanded with instructions to enter judgment for plaintiff in the amount of $1,457.50; affirmed on cross-appeal.