## HARTFORD FIRE INS. CO. v. WILSON & TOOMER FERTILIZER CO.*

(Circuit Court of Appeals, Fifth Circuit. March 21, 1925. Rehearing Denied April 13, 1925.)

No. 4352.

1. Insurance ⬦⟾507—Loss recoverable under policy insuring profits held not limited by temporary operations producing no profit.

Where manufacturer of fertilizer, and its ingredients on destruction by fire of factory, constructed temporary building, in which it continued to mix fertilizers from ingredients purchased, and in which it produced two-fifths of the fertilizer that it would have produced

*Certiorari denied 45 S. Ct. 639, 69 L. Ed. ——.

if there had been no fire, but made less than fixed charges, the recovery under policy insuring against loss of "net profits," and providing that, if insured should continue to do business at other location, net profits should be applied to reduction of loss and adjustment made as provided for partial losses, was not limited to three-fifths of total amount of insurance, there being no net profits.

**2. Constitutional law ⊙⇒317 — State statute providing for attorney's fee in judgment on insurance policy held not violative of due process clause.**

Rev. Gen. St. Fla. 1920, § 4263, providing for inclusion of attorney's fee in judgment for beneficiary on insurance policy, *held* not violative of due process clause of Const. U. S. Amend. 14.

**3. Constitutional law ⊙⇒248 — State statute providing for attorney's fee in judgment on policy held not violative of equal protection clause.**

Rev. Gen. St. Fla. 1920, § 4263, providing for inclusion of attorney's fee in judgment for beneficiary on insurance policy, *held* not violative of equal protection clause of Const. U. S. Amend. 14.

In Error to the District Court of the United States for the Southern District of Florida; William B. Sheppard, Judge.

Suit by the Wilson & Toomer Fertilizer Company against the Hartford Fire Insurance Company. Judgment for plaintiff (283 F. 501), and defendant brings error. Affirmed.

Daniel MacDougald, of Atlanta, Ga., and Thos. B. Adams, W. E. Kay, and Reuben Ragland, all of Jacksonville, Fla. (Spalding, MacDougald & Sibley, of Atlanta, Ga., Kay, Adams & Ragland, of Jacksonville, Fla., and Underwood, Pomeroy & Haas, of Atlanta, Ga., on the brief), for plaintiff in error.

Robert R. Milam and George C. Bedell, both of Jacksonville, Fla. (Arthur Y. Milam, B. R. Milam, and G. W. Milam, all of Jacksonville, Fla., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge. This is a suit to recover the face value of a fire insurance policy. The policy is for $21,000, and insures the use and occupancy of plaintiff's fertilizer factory. It contains the following provisions:

"The word 'business,' wherever used in this contract, shall be considered and held to have the following meaning according to the class of property insured: In a manufacturing property: 'The production of goods,'" etc.

"If the said building or machinery or equipment or stock contained therein be destroyed or damaged by fire occurring during the life of this policy, so as to necessitate a total or partial suspension of business, this company shall be liable under this policy for the actual loss sustained of net profits on the business which is thereby prevented, and for such fixed charges and expenses as must necessarily continue during a total or partial suspension of business, for not exceeding such length of time as shall be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of said building, and machinery and equipment and stock as may be destroyed or damaged, commencing with the date of the fire and not limited by the date of expiration of this policy, under the following terms and conditions, to wit:

"During the time of a total suspension of business, liability under this policy shall not exceed $70, for each business day of such suspension; during the time of a partial suspension of business, the per diem liability under this policy shall not exceed that proportion of the per diem liability which would have been incurred by a total suspension which the decrease in production (or business) bears to the full daily production (or business) at the time of the fire.

"It is a condition of this insurance that the daily production (or business) at the time of the fire shall be based upon the average daily production (or business) of all plants or properties herein described for the period in the preceding calendar year corresponding to the period of suspension due to the fire.

"Liability hereunder shall not exceed the amount of insurance by this policy, nor a greater proportion of any loss than the insurance hereunder shall bear to all insurance, whether valid or not, covering in any manner the loss insured against by this policy," etc.

"It is a condition of this insurance that as soon as practicable after any loss the assured shall resume complete or partial operation of the property herein described, and shall make use of other property, if obtainable, if by so doing the amount of loss hereunder will be reduced, and in the event of the assured continuing business (in whole or in part) at some other location or using other property during the time occupied in repairing or reconstructing the property named herein, the net profits so earned shall

be applied to the reduction of the loss, and adjustment shall be made as provided herein for partial losses."

The policy also contains an arbitration clause. Its provisions other than those above stated are not material to this case.

At the time of the fire, plaintiff's plant consisted of a number of buildings. Only one of them was damaged by fire, but it was completely destroyed, and was by far the largest building in the plant, and it was the most important. It was used in the manufacture of acid phosphate, bone black, and bone meal, and in the curing and mixing of the ingredients of commercial fertilizers. In it phosphate rock was passed through grinding machines, crushed and pulverized, then washed down and acidulated with sulphuric acid, and pumped from another building, which contained acid chambers. By these operations was produced acid phosphate, which is a principal ingredient of commercial fertilizer. In this building was located machinery for acidulating and dissolving bone black and grinding bone meal. In it also the various ingredients there manufactured were mixed and put into sacks and made ready for shipment. These were the principal operations carried on at plaintiff's plant. Sulphuric acid was manufactured in a separate building. There were a number of other buildings used for storage and other purposes, which included a power house, machine shop, and laboratory; but in none of them was any manufacturing process carried on.

After the fire, in an effort to diminish its loss, the plaintiff constructed a temporary building in which it continued to mix fertilizers. However, it did not manufacture any of the ingredients, but purchased them in open market. At the time of the fire, plaintiff carried other similar policies of use and occupancy insurance; the sum total of such insurance, including the policy now under consideration, being $100,000.

The defense was that, during the period required for the replacement of its destroyed building, the plaintiff produced two-fifths of the fertilizer that it would have produced if there had been no fire, and that recovery should be limited to three-fifths of the total amount of insurance.

The parties referred the loss to arbitration, and adjusters, appointed pursuant to the arbitration clause, found that it would require 315 days to replace the building destroyed by fire; that during that period of normal production plaintiff's output would have been 53,970 tons, which would have

produced an income of $532,586.72; that the fixed charges and expenses would have been $314,008.22, leaving a net profit of $218,578.50; that during the period of suspension the plaintiff could produce 21,588 tons in its temporary building, which would result in a gross income of $213,192.26, which was less by over $100,000 than its fixed charges and expenses. The result arrived at from these figures is that the plaintiff sustained a loss of $319,394.26. As a consequence, there were no net profits earned during the replacement period fixed by the arbitration. The declaration included a claim for attorney's fees.

At the close of all the evidence the trial court directed a verdict for the plaintiff for the full amount of the policy, and for reasonable attorney's fees, to which rulings the defendant excepted. A verdict was returned in accordance with the court's instructions, the fee for plaintiff's attorneys being fixed at $2,100, and judgment thereon was duly entered. Defendant assigns as error the rulings of the court, both as to the amount recoverable on the policy and as to an attorney's fee.

[1] The policy insures against loss of net profits on business which is prevented by fire, and for such fixed charges and expenses as must necessarily be continued during the period of the suspension of business, not to exceed the time required to rebuild, repair, or replace the damaged or destroyed building in which the business was being conducted. If there be a total suspension, the daily liability is 1/300 of the face of the policy, due no doubt to the fact, as stated by counsel in argument and brief, that in such policies the business year is estimated at 300 days. If the suspension of business be partial, it is provided that the per diem liability shall not exceed that proportion of the per diem liability provided for a total suspension which the decrease in business bears to the full normal daily business at the time of the fire. It thus appears that for a total suspension the per diem liability continues during the period of rebuilding or replacement, but that the per diem liability in case of a partial suspension is measured by the proportion that the decreased production bears to full normal production.

There was a total suspension, for a period of 315 days, of plaintiff's business of manufacturing fertilizer as conducted by it before the fire. Plaintiff was required by a clause of the policy to use other property, if by doing so it could diminish the loss payable under the terms of the policy. But the

same clause also provides that, in the event the plaintiff should continue business at some other location, or by using other property during the period of replacement, "the net profits so earned shall be applied to the reduction of the loss, and adjustment shall be made as provided herein for partial losses." In our opinion that clause has no application under the evidence in this case. The "loss hereunder," as there used, means the loss of any profits; of course, it includes fixed charges and expenses, because until they are earned there cannot be any net profits.

Plaintiff did not continue in the same business in which it had been engaged before the fire. The manufacture of fertilizers as theretofore conducted entirely ceased, and the plaintiff, by purchasing, instead of manufacturing, the ingredients of its fertilizers, engaged in a different kind of business, in an effort to diminish its own as well as defendant's loss. Defendant was not entitled to have the loss under the policy reduced, unless net profits were earned by the plaintiff. In our opinion the adjustment referred to in the quoted part of the clause for diminution of loss means adjustment of net profits, and does not come into play unless net profits should be earned. If, as contended by the defendant, there should be an adjustment in the proportion that the fertilizers bought and mixed by the plaintiff during the period of suspension of business bore to the full normal production of fertilizers manufactured and mixed during such period, even though no net profits were earned, then the policy would be of no value to an insured, because it would be possible, by multiplying temporary plants, to produce the full normal output, although the cost might be prohibitive. We do not think the policy is open to such a construction.

[2, 3] Section 4263 of the Revised General Statutes of Florida provides in substance that, upon the rendition of judgment against any person, company, copartnership, corporation, or association in favor of the beneficiary under a policy or contract of insurance, there shall be adjudged in favor of such beneficiary a reasonable sum as fee or compensation for the attorneys prosecuting the suit, and that the amount thereof shall be included in the judgment. It is contended that this section is repugnant to the equality and due process clauses of the Fourteenth Amendment. We think the contention must fail, in view of the decisions of the Supreme Court in Fidelity Mutual Life Association v. Mettler, 185 U. S. 308, 22 S. Ct. 662, 46 L. Ed. 922; Home Life Insurance Co. v. Fisher, 188 U. S. 726, 23 S. Ct. 380, 47 L. Ed. 667; Farmers' & Merchants' Insurance Co. v. Dobney, 189 U. S. 301, 23 S. Ct. 565, 47 L. Ed. 821. These cases hold that legislative classification of insurance contracts is not arbitrary, but reasonable.

The judgment is affirmed.