## PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. BARTON et al.

### No. 6131.

Circuit Court of Appeals, Fifth Circuit.

June 2, 1931.

Rehearing Denied July 6, 1931.

J. L. Doggett and Charles Cook Howell, both of Jacksonville, Fla. (Doggett, McCollum, Howell & Doggett, of Jacksonville, Fla., and Blake Franklin, of Los Angeles, Cal., on the brief), for appellant.

J. T. G. Crawford and Philip S. May, both of Jacksonville, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The Pacific Mutual Life Insurance Company, defendant below, appeals from a judgment at law rendered in a case removed from a state court of Florida, by which it was held liable to pay $7,000 on a policy of life insurance and $7,000 more because the death resulted solely through external, violent, and accidental means, and a fee for the attorneys of the plaintiffs. The pleadings were elaborately extended in common-law form, and numerous rulings as to their suffi-ciency are assigned as errors; but the case was at last by a written stipulation submitted to the court for decision without a jury upon an agreed statement of facts. The correctness of the judgment upon these facts is thus the controlling matter. We will notice but one question arising on the pleadings touching the authority of the agent through whom the insurance was placed, and who collected the premiums. The declaration alleged that the insured, Barton, made a written application for insurance, and delivered it to one Goodman, "who was then and there the duly authorized agent of said defendant," and thereafter "paid to the agent of the defendant the premiums on said life insurance and said accidental total loss benefits insurance for the period of one year next ensuing." There was a demurrer that it did not appear that the alleged agent was authorized to receive the payment. The demurrer was properly overruled, not because it was unnecessary that the agent have authority to act, but because alleging him to be an agent implies that he was authorized, and the allegation can be sustained only by proving an authority, actual or apparent. An act done through an agent may properly be alleged according to its legal effect as the act of the principal without alluding to the agent at all, or it may be done, as in this declaration, by averring the agency; and where the agency is averred it may be done generally, without describing the authority of the agent. Bank of Metropolis v. Guttschlick, 14 Pet. 19, 27, 10 L. Ed. 335; Childress v. Emory, 8 Wheat. 642, 669, 5 L. Ed. 705; 2 C. J., Agency, §§ 610, 611.

By its first amended plea the defendant denied that the agent to whom payment was alleged to have been made was authorized by defendant to receive the same. This plea was stricken on demurrer, seemingly because it did not deny an apparent authority or allege that the insured knew the agent's authority was limited. It was, however, as specific as the plaintiffs' allegation of authority, and appears to be a sufficient separate traverse of a material fact, which is allowed under the Florida pleading statute. Compiled General Laws of 1927, § 4321. The error, however, if any, in striking it was harmless because the general issue that defendant never promised as alleged was also pleaded, and that, we think, sufficiently puts in issue the authority, as well as the acts of the agent which were counted on as perfecting a contract with the defendant. The parties so understood, for the agreed statement

of facts undertook to cover, not only what Goodman did in this instance, but also what his express authority and customary practice was in collecting premiums.

The agreed facts are in brief these: The deceased, Barton, at Jacksonville, Fla., on January 11, 1927, upon a printed form bearing a serial number and evidently prepared and furnished by defendant, made written application to defendant, attested by Goodman, who signed as soliciting agent, for insurance on his life in an amount of $8,000, the policies to be on the plan of "ordinary life" and to carry monthly benefits of $120 in case of total disability, but $7,000 thereof was to be issued payable to his personal representatives and $1,000 to his wife. The $7,000 policy alone is in issue here. The application concluded thus: "It is understood and agreed (1) that if the entire amount of the first annual, semiannual or quarter premium as selected by me under the statement numbered 7a on the insurance herein applied for is not paid at the time of making this application, there shall be no liability on the part of said Company under this application unless or until a policy shall be issued and manually delivered to me and the entire amount of such first premium thereon actually paid during my lifetime, and while I am in good health; and (2) that if the entire amount of such first premium is paid to said Company's agent at the time of making this application the insurance, subject to the provisions of the said Company's policy applied for, shall be effective from the date of my medical examination therefor, and such a policy shall be issued and delivered to me or to my legal representative, provided the said Company in its judgment shall be satisfied as to my insurability on the date of such medical examination for the amount and on the plan and form applied for; and (3) that if said Company shall not be so satisfied the entire amount of the premium paid, without interest, shall be returned." A form followed, which was to be used in case the premium was prepaid to the agent; but it was left unfilled and unsigned. It referred to a premium receipt as attached which was to be detached and signed by the agent if such prepayment were made. On another sheet was a written request for $8,000 of "accidental total loss benefits," meaning insurance against accidental death, similarly to be divided, $7,000 to insured's personal representatives and $1,000 to his wife. This application was signed by Goodman only, and contained no stipulation postponing effective-

ness until delivery of the policy. No money was paid Goodman at that time for either insurance, but a medical examination was made and forwarded with the application to the home office of defendant at Los Angeles, Cal. On January 19, 1927, the home office, having approved the risk, issued a policy in the form applied for for $7,000 on the life of Barton, payable to his personal representatives, which provided for the monthly total disability payments, and apparently also issued a policy for $1,000 payable to the wife, and mailed them to its general agent at Jacksonville with a letter stating: "Before delivering the policies it will be necessary to get a signed statement from the applicant to the effect that his earnings are $1040.00 per month, this statement to be be sent to the home office." The statement to be signed read: "For your confidential information, and for the sole purpose of determining the amount of monthly disability benefits to which I may be entitled, I hereby declare that my average net earnings are in excess of $——— per month." The insurance against accidental death was issued as a separate policy, though bearing the same serial number as the other. It recites a separate premium, and is complete in itself. It purports to be signed by the defendant's officers at Los Angeles; but is to become effective when countersigned by a duly authorized agent or manager, and is so countersigned by the agent at Jacksonville under date of January 19, 1927. The policies sent from Los Angeles did not reach Jacksonville until January 24th. On January 22d, however, Barton paid Goodman in money the full premiums for all the insurance. The premium receipt originally attached to the application form appears now detached, but whether it was given to Barton at the time of this payment, and what was said in the transaction, does not appear. When the policies arrived, Goodman sought to have Barton sign the certificate of earnings (of which Barton had never been in any way advised), and to deliver all the policies, but found him out of the city. On January 28th, and before returning to Jacksonville, Barton was killed in an automobile accident. The premiums were tendered back to plaintiffs on February 18, 1927, and refused. Goodman customarily collected the first premium on all insurance which he sold, and was allowed sixty days in which to deliver or return policies and make settlement with defendant. In this case he did not deliver the money to the defendant until after Barton's death. He was not expressly authorized to collect premiums

except when paid with the policy, or on delivery of the policy.

Upon these facts, and the favorable inferences which the judge acting in place of a jury might make, we think the law is with the plaintiffs. Touching the accident policy, there can be little doubt. It is a separate contract from the other insurance. The application for it was distinct, signed by Goodman and not by Barton. The premium was separate, and its provisions were embodied in a separate policy. It took effect, not by any act at the home office, but by countersignature in Jacksonville. For such accident policies no medical examination is customarily required, because if disease should contribute to the death there is no liability. Ryan v. Continental Casualty Co., 47 F.(2d) 472, decided by this court at the present term. They are frequently issued, like fire policies, without communication with the home office, on mere countersignature of a local agent. There was here no agreement to postpone the operation of this insurance until the delivery of the policy. The certificate of earnings had nothing to do with accidental death. If this policy came from Los Angeles with the ordinary life policies, there is nothing in the accompanying letter certainly referring to it, or requesting its nondelivery. When Barton's unconditional application for accident insurance was accepted by issuing the policy, and he paid his full premium, the contract was complete, and the insurance was of force without delivery of the policy to him. 32 C. J., Insurance, § 226.

The case as to the other insurance is not so clear. The monthly benefits insurance, while no claim has arisen or can arise under it since Barton so soon died, was applied for along with the ordinary life insurance, and is part of the same policy. Monthly earnings have a direct bearing upon this risk. It is plain that the defendant's home office did not intend to put this policy in force by delivery until assured that Barton's monthly earnings were far in excess of sick benefits claimable under this and other policies which he had. As the premium had not been paid on this policy at the time of the application, the home office, in issuing the policy and conditioning its delivery, understood that under the first alternative above quoted from the application, the insurance would not go into effect until manual delivery of the policy to Barton while alive and in good health. No such delivery occurred, but within three days after the home office had approved the health risk and mailed the policy to be delivered on obtaining the certificate about Barton's earnings, Goodman collected the full premiums. This act put another face upon the situation. The declaration in the case does not claim that the policy was ever delivered, and does not exhibit it as the cause of action, but exhibits the application and claims that the collection of the premium by Goodman entitled Barton to the insurance applied for as it was defined in the policy duly issued but not delivered. This claim involves rather the acts and intentions of Goodman than those of the home office, and demands examination of his authority to bind the defendant. We lay no great stress upon the statute of Florida Compiled General Laws of 1927, § 6207, which declares in substance that any person who receives or receipts for money on account of any contract for insurance shall be deemed *to all intents and purposes* an agent or representative of the insurer. In American Fire Insurance Co. v. King Lumber Co., 74 Fla. 130, 77 So. 168, affirmed in 250 U. S. 2, 39 S. Ct. 431, 63 L. Ed. 810, this statute was held to make Florida insurance brokers who collected the premium so far the agents of a foreign insurance company as that their knowledge of a breach of warranty at the time the company issued a fire policy at its home office constituted a waiver of the breach. But in Mutual Life Insurance Co. of New York v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, it was said that this statute, while it might settle whether one doing the things it mentioned was the agent of the insurer rather than of the insured, did not fix the scope of his authority as between the company and third persons, nor convert a special agent with limited powers into a general one with unlimited powers. And the view was expressed by this court in Maryland Casualty Co. v. Campbell, 255 F. 437, and Fidelity-Phenix Fire Ins. Co. v. Handley, 296 F. 902, that an authority is not given by this statute which the parties contract shall not exist.

In the present case there is no dispute that Goodman was the defendant's agent; the question is as to his real or apparent authority under the evidence and the agreement touching it. We have no direct evidence of the scope of his employment. The reference to his express authority to collect premiums on taking applications and delivering policies we understand to refer to the provisions of the defendant's application form above quoted. The forms furnished an agent for his use in transacting business

with the public are cogent evidence as to what he is employed to do, and are representations to the public that he has authority to do the things thereby indicated. 32 C. J., Insurance, § 134, and cases under note 32. There is no effort in this form expressly to limit the agent's authority. While he signs as "soliciting agent," the form itself indicates that he is much more than that. It is said that a soliciting agent has only power to make out and transmit applications for insurance, but cannot make contracts therefor, and is thus distinguished from a general agent. 32 C. J. §§ 145, 181, 182, 183. Goodman, by this application form, is held out as having power by receiving the full premium to bind the defendant to an insurance according to the policy applied for, and effective from the date of the medical examination subject to one condition only: That the company is satisfied of applicant's insurability at that date. The insurance is independent of consent at the home office, and of the actual issuance of a policy before death, for the policy is represented as deliverable to applicant or his legal representative. Defendant's furnishing Goodman with this form for Barton to sign is in effect an assurance to Barton that payment of the premium to Goodman will accomplish the things stated in the form. It is true that the form speaks of "payment to the Company's agent at the time of making this application," but there is no denial of power to receive payment pending the application. The alternatives in the form suggest that the company refuses to insure without payment, and if the applicant wishes not to pay until he is certain of getting his insurance, that both payment and insurance shall stand in abeyance until policy and payment are actually exchanged during the life and good health of applicant; but if applicant will pay the company's agent it will insure him from the date of his medical examination if he is insurable, payment and insurability being the only things insisted on by the company, and insurability being the only thing which the home office reserves to itself to decide. This is a wide departure from the plan of application to be met with in most of the adjudicated cases, where the authority of the agent taking the application is by its terms strictly limited, and where the insurer is seeking to defer until the last possible moment the operation of the insurance. We think Barton may well have understood that Goodman could take the money at any time pending the determination of and notification concerning his insurability, and by so doing make the appli-

cation operate under the second alternative expressed in it. They could have accomplished this unquestionably by filling out a new form based upon the same medical examination and making the payment. The acceptance of payment by the agent is the substantial thing that determines whether the application is only a proposal for insurance or a conditional contract of insurance. Having the power so to contract by accepting payment, no good reason appears why the pending application could not be adopted in connection with the payment in lieu of writing out a new one. If notice to the principal be desired, it could have been given, and is implied by law. Such an adoption must have been Barton's and Goodman's intention. The money would not have been paid and accepted if nothing was to be accomplished thereby. Under the first alternative it was not due until the manual delivery of the policy. There is no suggestion of any change of health or other circumstance that would supply any other motive. Whatever restriction there may have been upon the authority of Goodman to receive premiums was unknown to Barton. His apparent authority extended to receiving them at all times and to making a conditional contract of insurance such as was set forth in the application form.

Apparent authority is equal to real authority when the limitations are unknown. 32 C. J., Insurance, § 181. There were in the insurance policy statements that agents are not authorized to make, alter, or discharge contracts, and that premiums are to be paid only to agents who have company receipts to be given for them. But these not having been brought to the knowledge of Barton by delivery of the policy, do not affect him. They would control only things done after the policy should become by acceptance the full embodiment of the contract. Goodman indeed had company receipts for premiums, and for all that appears may have signed and delivered to Barton the one detached from the application form. Barton having been found insurable, and the premium having been fully paid, the insurance dated from the medical examination. There was no right to condition the delivery of the promised policy by requiring a statement as to monthly earnings which was not alluded to in the application form nor by Goodman. New York Life Ins. Co. v. Baker (C. C. A.) 33 F.(2d) 434; Unterharnscheidt v. Missouri State Life Ins. Co., 160 Iowa, 223, 138 N. W. 459, 45 L. R. A. (N. S.) 743. The judge was

justified in holding that the policy ought to have been delivered to the legal representatives of Barton after his death, as mentioned in the application form.

Error is assigned generally on the allowance of an attorney's fee to the plaintiffs. A Florida statute long antedating this insurance provides for the allowance of such a fee in insurance cases. Compiled General Laws, 1927, § 6220. Its unconstitutionality is suggested in argument, but no pleading or assignment of error asserts conflict with any particular constitutional provision, or shows the point to have been raised at the trial. No constitutional question is therefore presented for decision here. New York v. Kleinert, 268 U. S. 641, 45 S. Ct. 618, 69 L. Ed. 1135; Wong Tai v. U. S., 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545. The statute has, however, been upheld by the Supreme Court of Florida. United States Fire Ins. Co. v. Dickerson, 82 Fla. 442, 90 So. 613, and by this Court, Hartford Fire Ins. Co. v. Wilson & Toomer, 4 F.(2d) 835.

The judgment is affirmed.