JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, a nombre de la UNIÓN DE EMPLEADOS DE TRANSPORTE DE CATAÑO, peticionaria, *v.* COMPAÑÍA POPULAR DE TRANSPORTE, INC., demandada.

Número 41

*Sometido:* 16 de abril de 1954.   *Resuelto:* 3 de agosto de 1954.

*Hon. Secretario de Justicia José Trías Monge, A. Torres Braschi, Secretario de Justicia Auxiliar, Ramón Acevedo Oliveras* y *Eduardo Álvarez de la Vega,* abogados de la peticionaria; *Héctor Ramos Mimoso,* abogado de la demandada.

1

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

En 29 de noviembre de 1950 la Unión de Empleados de Transporte y la Compañía Popular de Transporte, Inc. (1) celebraron un convenio colectivo cuya cláusula XIX (*n*) reza así:

"La Compañía dará una bonificación a fin de año a los empleados de 1½ semana pagaderas el día 22 de diciembre de 1951, una semana y el 29 de diciembre de 1951 la otra media semana. Esta Disposición en ninguna forma se entenderá como que establece precedente alguno para el futuro en las relaciones obrero-patronales, ya que se establece como una concesión especial para regir durante la vigencia de este convenio o sea durante el año de 1951."

En la cláusula XXII del convenio se dispone, además, que:

"Este convenio estará en vigor desde el 1ro. de enero de 1951 hasta el 31 de diciembre de 1951, continuando en vigor de año en año, a menos que, por lo menos con 30 días de antelación a la fecha de su vencimiento, cualquiera de las partes notifique por escrito a la otra, su deseo de enmendarle o darle por terminado al expirar el año vigente. Tal notificación deberá hacerse a la otra parte, por correo certificado, a la dirección de la misma y si se tratara de enmendarlo para el período subsiguiente, la notificación explicará la naturaleza del cambio o cambios en cualquiera de las disposiciones de este convenio."

Ya próximo a expirar el término original de vigencia del convenio, es decir en 28 de noviembre de 1951 la Unión y la Compañía, por sus respectivos representantes, suscribieron una estipulación que textualmente se lee del siguiente modo:

"Comparecen la Unión de Empleados de Transporte y la ·Cía. Popular de Transporte, Inc., y acuerdan y convienen el prorrogar la vigencia del convenio colectivo existente entre dicha unión y la empresa para que siga vigente hasta 30 días después que se ventile la vista en la Comisión de Servicio Público en relación con la nueva franquicia.

"Se estipula que la unión hará gestiones para cambiar el servicio médico actual en la forma que mejor convenga a los intere-

(1) En lo sucesivo nos referiremos a la primera como "la Unión" y a la segunda como "la Compañía."

ses de los trabajadores siempre y cuando la Cía. Popular no tenga que hacer una mayor erogación por el mismo. Se sobreentiende que se incluirá en dicho plan a los empleados administrativos."

Nada se dice específicamente en esa estipulación respecto a si la antes mencionada cláusula XIX (*n*) regirá o no para el año 1952. Respecto a la bonificación para 1951 no hubo problema alguno. El problema surgió cuando al acercarse las navidades de 1952 la Unión exigió el cumplimiento de la cláusula XIX (*n*) para ese año, o sea el pago de la semana y media de bonificación a que la misma se refiere. En su consecuencia, habiendo disparidad de criterio sobre el particular, en 22 de diciembre de 1952 la Compañía y la Unión, representada la primera por Ularislao Córdova y la segunda por J. Álvarez Brunet y A. Guzmán, suscribieron una "estipulación para someter un caso a arbitraje" (²) que copiada en su integridad dice así:

"Las partes que firman esta estipulación acuerdan voluntariamente someter a arbitraje las cuestiones en controversia que se especifican a continuación y sobre las cuales las partes no han logrado ponerse de acuerdo:

"*Que el árbitro decida si el inciso 'N' de la cláusula diecinueve (19) del Convenio Colectivo de 1951 está o no en vigor para el año 1952, de acuerdo con la cláusula de vigencia que aparece del citado contrato y la estipulación firmada por las partes de fecha 28 de noviembre de 1951.*

"El árbitro (o árbitros) lo será *el Secretario del Trabajo de Puerto Rico o la persona que éste designe.*

"Las partes se comprometen a someter alegatos por escrito dentro de......días a partir de la fecha en que se celebre la vista a la cual convoque el árbitro; entendiéndose que cualquiera de las partes, o ambas, puede renunciar a este derecho si lo cree conveniente.

---

(²) La anterior estipulación figura en una forma mimeografiada del Departamento de Trabajo, Servicio de Conciliación, (Sección de Arbitraje) forma 1-B, en la cual se llevaron a máquina todo lo que aparece en bastardillas.

"La decisión del árbitro (o árbitros) será final y mandatoria para las partes." (³)   (Bastardillas nuestras.)

En armonía con la anterior estipulación el Secretario de Trabajo designó al Lic. Guillermo Estrella Frasqueri para actuar como árbitro en el caso.   El árbitro así designado señaló el 29 de enero de 1953 para oír a las partes en relación con el alcance que debía dársele a la estipulación suscrita por la Unión y la Compañía en 28 de noviembre de 1951, a que ya hemos hecho mención.   A esa vista comparecieron Ularislao Córdova por la Compañía y Abigaíl Guzmán y Juan Osorio —en su carácter de Presidente y Tesorero, respectivamente— por la Unión, actuando como asesor de esta última el Lic. Víctor Bosch.   Durante esa vista ambas partes ofrecieron la prueba que creyeron pertinente, concediéndose a las partes hasta el 6 de febrero siguiente para presentar alegatos.   En 11 de marzo del mismo año el árbitro emitió su laudo.   En él analiza tanto las cuestiones de hecho como de derecho surgidas durante la vista, y concluye:

"1. Que al firmarse en 28 de noviembre de 1951 la estipulación entre la Compañía Popular de Transporte, Inc, y la Unión de Empleados de Transporte donde se expresa que se acordó 'prorrogar la vigencia del convenio colectivo existente entre dicha unión y la empresa para que siga vigente hasta 30 días después que se ventile la vista en la Comisión de Servicio Público en relación con la nueva franquicia', la totalidad del convenio colectivo del año 1951, desde su primera hasta su última cláusula inclu-

---

(³) La anterior estipulación fué suscrita por la Unión y la Compañía, en la forma ya indicada, no obstante el hecho de que por la cláusula III del convenio colectivo se crea un comité de quejas y agravios, que se compondrá de dos representantes de la Compañía y dos de la Unión, y a pesar de que en esa cláusula se hace constar que si los cuatro miembros del comité no llegan a un acuerdo en la solución de cualquier querella se designará un quinto miembro que será seleccionado de mutuo acuerdo por ambas partes, pero que si no se pudieren poner de acuerdo para seleccionar el quinto miembro éste será el Sr. José Víctor Llauger Bosch, y que *los citados cuatro miembros en unión al quinto así seleccionado constituirán un comité de arbitraje* que dará a los obreros y a la compañía la oportunidad de presentar y explicar por escrito sus argumentos en el caso y una vez estudiada la evidencia emitirá su fallo que será final y obligatorio para ambas partes. (Énfasis nuestro.)

yendo el Inciso (*n*) de la Cláusula XIX de dicho convenio, quedó prorrogado hasta 30 días después de ventilada dicha vista;

"2. Que habiéndose dictado resolución por la Honorable Comisión de Servicio Público en relación con la vista de la solicitud de franquicia del señor Ernesto Cortés Santana en 18 de diciembre de 1952, y notificadas las partes de esta resolución el 23 de diciembre de 1952, las referidas vistas no quedaron legal y definitivamente terminadas ante la Comisión hasta el día 18 de diciembre de 1952 en que se dictó resolución en el caso, debiendo contarse los referidos 30 días a partir del 23 de diciembre de 1952 en que las partes fueron notificadas por correo de dicha resolución;

"3. Siendo la vigencia de la prórroga acordada en la estipulación hasta 30 días después de ventiladas dichas vistas, el convenio colectivo de 1951 estuvo en vigor en todas sus partes, incluyendo el Inciso (*n*) de su Cláusula XIX hasta el día 23 de enero de 1953; y

"4.—Que a virtud de todo lo expuesto, la Compañía Popular de Transporte, Inc., viene obligada a pagar a sus empleados cubiertos por el referido convenio colectivo de 1951 y prorrogado en la forma ya dicha, la bonificación de 1½ semana de sueldos consignada en dicho Inciso (*n*) de la referida Cláusula XIX del convenio."

Así las cosas, el 6 de noviembre de 1953 la Junta de Relaciones del Trabajo de Puerto Rico, a nombre de la Union, acudió ante nos con una petición en la que solicita ordenemos a la Compañía dé cumplimiento al laudo de arbitraje emitido y que pague inmediatamente a sus trabajadores la bonificación requerida por el art. XIX (*n*) del convenio colectivo. Véase el art. 9 (2) (*c*) (⁴) de la Ley 130 de 8 de mayo de 1945

---

(⁴) El art. 9 (2) (*c*) de la Ley 130, supra, reza así:

"A los fines de promover la negociación colectiva, la Junta podrá, en el ejercicio de su discreción, ayudar a poner en vigor laudos de arbitraje emitidos por organismos competentes de arbitraje, bien designados de acuerdo con cualquier convenio colectivo firmado por un patrono y una organización obrera, o en virtud de cualquier acuerdo firmado por una organización obrera y un patrono. Después de emitido un laudo de arbitraje, la Junta, a solicitud de cualquiera de las partes en el procedimiento de arbitraje, podrá dar su consejo o podrá, si fuere requerida para ello, a nombre de la parte que lo solicite, entablar acción legal adecuada ante la Corte Suprema de Puerto Rico para que se ponga en vigor el laudo de arbitraje."

(pág. 407), según fué enmendado por la Ley núm. 6 de 7 de marzo de 1946 (págs. 19, 45). Cuatro días más tarde dictamos una resolución ordenando que se notificara a la demandada para que dentro del término de 10 días mostrara causas, si algunas tuviere, por las cuales no debía dictarse el decreto solicitado, advirtiéndole que de no comparecer dentro del término indicado se dictaría el decreto interesado sin más citarle ni oírle, que de comparecer la mostración de causa debería venir acompañada de un alegato, e indicándole que una vez radicado éste el caso quedaría sometido para su decisión a menos que cualquiera de las partes solicitara una vista dentro de los cinco días siguientes a la radicación de dicho alegato. La compañía demandada contestó en su oportunidad y previa orden nuestra al efecto el caso empezó a verse ante este Tribunal el 4 de marzo de 1954. Durante la vista la peticionaria—en vez de limitarse a hacer una ligera relación del caso, a manifestar que el laudo se había dictado en la forma ya indicada y que el mismo no se había cumplido por la compañía—ofreció prueba testifical y documental que tendía a destruir anticipadamente las defensas que a su juicio aduciría la compañía para justificar su incumplimiento del laudo. Tal proceder fué erróneo. Dándonos cuenta de ello, al terminar la peticionaria con su prueba y al ser llamado el caso en 11 de marzo para la continuación de la vista, inquirimos de la compañía querellada cuál era su teoría del caso. Ésta manifestó por su abogado, en síntesis, que su prueba iría "dirigida a demostrar que el Sr. Administrador de la Compañía Popular de Transporte, Inc., firmó ese acuerdo de sumisión luego de haber hecho la reserva de que . . . la compañía . . . se reservaba, tenía derecho a apelarlo a las cortes . . . que él tenía facultad para representar a la compañía sujeto a la condición de que el arbitraje fuera apelado." También manifestó el abogado de la querellada que ésta sostendría (1) que el laudo es contrario a la política pública; y (2) que el árbitro incurrió en errores de derecho sustantivo y en la apreciación de la prueba, indicando a la vez que para nada de esto ofrecería

evidencia. Luego de discutirse por las partes la cuestión relativa a la admisibilidad de prueba sobre el primer punto suscitado por la compañía, el tribunal por voz de su Juez Presidente interino, se expresó así: "en vista de las manifestaciones del letrado (de la compañía) al efecto de que no ofrecerá prueba en relación con los demás motivos de su impugnación y habiéndose planteado la cuestión de si es admisible o no prueba oral en relación con el primer punto que ha sido previamente presentado, de toda la discusión surgida en esta vista el Tribunal cree que lo que procede es conceder términos a las partes para que discutan por escrito toda la cuestión; primero, si es admisible o no prueba en relación con el primer punto planteado y discutido y en ese mismo memorándum pueden discutir todas las demás cuestiones de derecho o demás motivos de impugnación. Naturalmente si en definitiva el tribunal cree que la prueba es admisible, entonces señalaremos una vista para oír esa prueba. Si por el contrario el tribunal llega en definitiva a la conclusión de que esa prueba no sería admisible, entonces consideraría el caso como sometido en los méritos y pasará a resolverlo en definitiva."

En los alegatos radicados por las partes, al argumentar la cuestión de si es admisible o no prueba tendente a demostrar que la autoridad dada por la Compañía a su administrador Ularislao Córdova para firmar la estipulación de 22 de diciembre de 1952 era una limitada, ellas se enfrascan en una prolongada discusión sobre la interpretación y alcance que debe dársele al art. 25 de nuestra Ley de Evidencia, preceptivo de que:

"Cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento, excepto en los siguientes casos:

"1. Cuando una equivocación o imperfección en el documento fuere alegada en el litigio.

"2. Cuando la validez del convenio constituyere el hecho controvertido.

"Pero este artículo no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, según lo definido en el artículo veinte y ocho, o para explicar una ambigüedad extrínseca, o probar ilegalidad o fraude. La palabra 'convenio' incluye escrituras y testamentos, así como contratos entre las partes."

Sin embargo, no creemos necesario discutir desde ese ángulo la cuestión de si debemos admitir o no prueba oral para demostrar que la autoridad del administrador Córdova al firmar la indicada estipulación de 22 de diciembre de 1952 era una limitada y por ende si se excedió o no en la esfera de sus atribuciones como tal administrador (mandatario) al suscribir la estipulación en la forma en que lo hizo. Decimos esto porque hay otro principio de derecho a virtud del cual a nada conduciría admitir—suponiendo que ella sea admisible bajo el art. 25 de la Ley de Evidencia, supra—la prueba que se propone someter la compañía. (Por la misma razón no tenemos que considerar, ni consideramos, la prueba aducida a este respecto por la Junta.) La compañía ha admitido claramente no haber dado cumplimiento al laudo. Ha admitido asimismo que Córdova estaba autorizado para suscribir a nombre de ella la indicada estipulación. Su única contención es que Córdova se excedió en las facultades conferídasle. Es indiscutible que "el mandatario no puede traspasar los límites del mandato"; que "en la ejecución del mandato ha de arreglarse el mandatario a las instrucciones del mandante;" que "el mandante debe cumplir todas las obligaciones que el mandatario haya contraído dentro de los límites del mandato," y que "en lo que el mandatario se haya excedido no queda obligado el mandante sino cuando lo ratifica expresa o tácitamente." Arts. 1605, 1610 y 1618 del Código Civil, ed. 1930. Empero, es doctrina conocida en derecho que si bien las facultades concedidas por un mandante a un mandatario pueden ser limitadas por instrucciones privadas del mandante, tales instrucciones no afectan a terceras personas

que no tienen conocimiento de ellas. *Sabalier* v. *Iglesias*, 34 D.P.R. 352, 366–367; *Fornaris* v. *Compagnie Generale*, 26 D.P.R. 403. Podría decirse que ésa es una doctrina universal. Existe en casi todos los estados de la unión americana y ha sido enunciada también por el Tribunal Supremo de Estados Unidos. *Great Northern R. Co.* v. *O'Connor*, 232 U. S. 508, 58 L. ed. 703; *Pacific Mut. Life Ins. Co. of California* v. *Barton*, 50 F.2d 362, cert. denegado en 284 U. S. 647; *Standard Acc. Ins. Co.* v. *Simpson*, 64 F.2d 583, cert. denegado en 290 U. S. 688; 12 A.L.R. 112; 2 C.J.S., sec. 95 y 96(*b*), págs. 1202 y 1208; 2 Am. Jur. 88, sec. 105. También en España se ha reconocido este principio—Sentencia de 20 de junio de 1894, 75 Jur. Civ. 808—. Sobre el mismo el tratadista Scaevola se expresa así a la pág. 148 del tomo 26, vol. II de sus Comentarios al Código Civil Español (ed. 1951):

"Con anterioridad al Código ha sido declarado por el Tribunal Supremo que las órdenes e instrucciones privadas entre mandante y mandatario sólo son obligatorias para éste, sin que los efectos de ellas puedan ser transcendentales a un tercero ni causarle perjuicio . . ."

En igual forma se pronuncia Oyuelos a la pág. 198 del tomo 7 de su Digesto.

La Compañía no ha alegado en momento alguno que las instrucciones privadas que ella diera a su administrador en relación con la tantas veces mencionada estipulación de 22 de diciembre de 1952 fueran puestas en conocimiento de la Unión y que ésta no obstante el conocimiento que tenía de esas instrucciones privadas firmó la estipulación en la forma que aparece transcrita textualmente más arriba. Por el contrario, parece admitir que la Unión no conocía esas instrucciones privadas. La contención única de la compañía, repetimos, es que ella dió facultades limitadas a su administrador y que éste a pesar de conocer plenamente las limitaciones impuestas a esas facultades, se excedió de las mismas al firmar la estipulación en la forma en que lo hizo. No hay duda de que

el administrador tenía autoridad aparente u ostensible para firmar la estipulación del modo en que lo hizo, y no alegándose en forma alguna que la Unión tuviera conocimiento de esas instrucciones privadas no debe permitirse ahora a la Compañía que ofrezca prueba que tienda a demostrar tales limitaciones. Ello resultaría en un acto fútil, pues aun aceptando como cierto que tales limitaciones en las facultades del administrador existieran, las mismas no podrían obligar a la Unión si ésta no tenía conocimiento de ellas.

No es menester discutir las demás cuestiones levantadas por la Compañía durante el acto de la vista, al efecto de que el laudo es contrario a la política pública y de que el árbitro incurrió en errores de derecho sustantivo y en la apreciación de la prueba. Véanse, sin embargo, *Junta Relaciones del Trabajo* v. *N. Y. & P. R. S/S Co.,* 69 D.P.R. 782, 800–801, nota 8; *Junta Rel. del Trabajo* v. *Soc. Mario Mercado e Hijos,* 74 D.P.R. 403, 408. En vista de la conclusión a que antes llegamos, tampoco es necesario discutir el efecto que pueda haber tenido la radicación por la Compañía, por conducto del propio abogado que la representa en este Tribunal, de una moción de reconsideración ante el árbitro.

*Se dictará sentencia declarando con lugar la petición y ordenando a la demandada que cumpla el laudo de arbitraje emitido en este caso en 11 de marzo de 1953.*

El Juez Asociado Sr. Negrón Fernández, aunque intervino en la vista de este recurso, no tomo parte en su decisión final.

El Juez Asociado Sr. Ortiz no intervino.